## J. P. RILEY, Respondent, v. AMERICAN CENTRAL INSURANCE COMPANY, Appellant.

**Kansas City Court of Appeals, February 5, 1906.**

1. **INSURANCE: Waiver: Power of Agent.** An agent who solicits insurance, countersigns the policy and collects the premium is the *alter ego* of the company and may waive the provisions of the policy.

2. ——: ——: **Safe Clause.** On the evidence it is held that the question of waiver of the clause in an insurance policy relating to the inventories and books being kept in a fire-proof safe in the building or removed beyond the danger of fire if the building burned, was properly submitted to the jury. Cases considered and harmonized.

3. ——: ——: **Evidence: Varying Contract.** The rule that all prior and contemporaneous undertakings are merged in the written contract which may not be contradicted by parol evidence, does not conflict with the rule that obligations of written contracts may be waived by conduct of parties occurring after its execution; and so where at the time of issuing a policy the insurer knows of the custom and practice of the assured in regard to keeping his books, papers and inventories, and after the delivery of the policy is informed that such practice will be continued and thereupon receives the premium from the assured, he waives the stipulations of the policy requiring a different practice in that regard.

4. ——: ——: ——: **Instructions.** Testimony tending to show a waiver of the conditions of a policy of insurance after its delivery is properly admitted, and instructions submitting such evidence to the jury is properly given.

Appeal from Jasper Circuit Court.—*Hon. Hugh Dabbs,* Judge.

AFFIRMED.

*Fyke & Snyder* for appellant.

(1) The court erred in permitting plaintiff to testify to conversations between plaintiff and defendant's agent prior to the time the policy was issued. Gillum

v. Ins. Co., 106 Mo. App. 673; Ins. Co. v. Neiberger, 74 Mo. 167; Helm v. Railroad, 98 Mo. App. 419; Catterlin v. Lusk, 98 Mo. App. 182; Ins. Co. v. Buchalter, 83 Mo. App. 504; Ijams v. Life Assn., 185 Mo. 466; Sowers v. Ins. Co. (Iowa), 85 N. W. 763. (2) And for the same reason plaintiff's second instruction is erroneous. Ijams v. Life Ass'n, 185 Mo. 466. (3) The court erred in giving plaintiff's third instruction because there is no evidence to warrant it. It will be noticed that plaintiff did not claim that he ever talked with Allen more than once about where he kept his books, and that was before the policy was issued. Gillum v. Ins. Co., 106 Mo. App. 673; Ins. Co. v. Mize, 34 S. W. 670 (Tex.); Ins. Co. v. Brownell, 62 Ark. 43; Morris v. Ins. Co. (Ga.), 32 S. E. 599; Thompson v. Ins. Co., 169 Mo. 12, 23; Guar. Co. v. Coal Co., 103 Mo. App. 547. (4) The court erred in overruling defendant's demurrer to the evidence, when plaintiff closed, and again at the close of all evidence. 13 A. and E. Ency. of Law (2 Ed.), p. 355; Ins. Co. v. Wilkinson (Ark.), 13 S. W. 1103; Shoe Co. v. Ins. Co., 28 S. W. 1027; Ins. Co. v. Allen, 24 So. R. 399 (Ala.); Id., 30 Southern 537; Ins. Co. v. Brownell, 62 Ark. 43, 34 S. W. R., 83; Ins. Co. v. Parker, 61 Ark. 207; Assurance Co. v. Altherium, 58 Ark., 25 S. W. 1067; Ins. Co. v. Stubbs, 98 Ga. 754, 27 S. E. 180; Ins. Co. v. Sprague, 8 Ind. App. 275; Goldman v. Ins. Co. 48 Louisiana 220; Jones v. Ins. Co., 38 Fed. 19; Ins. Co. v. Forehand, 169 Ill. 626, 48 N. E. R. 830; Lozaro v. Ins. Co., 78 Fed. 278; Sowers v. Ins. Co., 85 N. W. 763 (Iowa); Roberts et al. v. Ins. Co., 48 S. W. 559 (Texas); Davis v. Ins. Co., 78 N. W. R. 596 (Wis.); Ins. Co. v. Crist, 56 S. E. 658; Redunson v. Ins. Co., 34 So. R. 18 (Ala.); D. G. Co. v. Ins. Co., 100 Mo. App. 504; Fire Assn. v. Calhoun (Tex.), 67 S. W. 153; Hester v. Ins. Co., 41 S E. 522 (Ga.); Crigler v. Ins. Co., 49 Mo. App. 11; Gibson v. Ins. Co., 82 Mo. App. 515; Harveston v. Ins. Co., 105 Mo. App. 575; Ins. Co. v. Allen (Kan.), 77 Pac. 529.

*Thomas & Hackney* and *Howard Gray* for respondent.

(1)   The knowledge of the defendant that plaintiff had no safe and had not for a number of years kept a set of books, as required by former policies, and with the understanding that he would not keep such books during the life of the policy in question amounted to a waiver of that clause in the policy. Hanna & Co. v. Ins. Co., 109 Mo. App. 152; Busch v. Ins. Co., 85 Mo. App. 155; Ross-Langford v. Ins. Co., 97 Mo. App. 79; Carr v. Ins. Co. 100 Mo. App. 602; James v. Ins. Co. 148 Mo. 1; Laundry Co. v. Ins. Co., 151 Mo. 90; Mitchell v. Ins. Co., 18 So. 86, 48 A. R. 535; Trust Co. v. Ins. Co., 79 Mo. App. 362.   (2)   We submit that even under the decision cited by the appellant, the verdict in this case is for the right party and should not be disturbed.

ELLISON, J.—This is an action on a fire insurance policy in which plaintiff prevailed in the trial court. It appears from the terms of the policy that plaintiff was a retail merchant in a small town in Jasper county and that it was stipulated that: "The assured shall keep such books and last inventory, and also last preceding inventory, securely locked in a fire-proof safe at night, and at all times when the building mentioned in this policy or the portion thereof containing the stock described therein, if not actually open for business; or, failing in this, the assured will keep such books and inventories at night, and at all such times in some place not exposed to a fire which would ignite or destroy the aforesaid building." The evidence showed that a loss occurred by fire about six months after the policy was issued. It also showed that plaintiff did not comply with those provisions of the policy.

Plaintiff, in support of the judgment, relies upon a waiver of the provisions. There was evidence tending to show that defendant's agent had been insuring plain-

tiff for about ten years, a great portion of the time in this defendant company. That during all that time he told the agent and the agent knew that he did not have a safe and that he would not get one, and that he would not keep his books in a safe, nor would he take them home at night, but would leave them at the store. That he showed the agent the kind of books he kept and where he kept them. That he told him that, at the issuance of the present policy as well as before. The evidence further tended to show that on the day before the fire occurred this agent was in plaintiff's store and solicited him to take out additional insurance as he (the agent) did not think what was then on it was enough. And that in this conversation they talked about "the books and matters" and the agent said to him, when thus soliciting more insurance, that "You are still going ahead, keeping your books like you have been?" And he told him that he was. The instructions on the subject of waiver were to the effect that if the jury believed that the agent had the knowledge thus testified to and failed to cancel the policy, or to make any objection thereto, it was a waiver.

The first question, then, is on the power of the agent to waive the provisions in controversy. In view of the rulings of the courts in this State in the last few years, there can be no doubt of the authority of the agent. He solicited, issued and countersigned the policy, and collected premiums, and was therefore the *alter ego* of the company. [James v. Ins. Co., 148 Mo. 1.]

The remaining question is, did he waive such provisions. We have already stated the evidence in plaintiff's behalf bearing on that question. From such evidence, it appears that the agent was informed by plaintiff when he issued the policy that he would not do what is therein provided he should do; and that after he issued the policy he knew that plaintiff, in keeping with what he had told him, was not complying with these provisions. That, on the day before the fire, the agent

saw that he was not complying with those provisions and instead of objection or taking steps for forfeiture, he solicited additional insurance. Undoubtedly, this was sufficient upon which to base a finding of waiver. In Springfield Laundry Co. v. Ins. Co., 151 Mo. 90, 98, it was provided in the policy that, if the property should be advertised for sale under a mortgage thereon, the policy should become void. The property was advertised, and the local agent knew that it was, but he took no steps towards canceling the policy. It was held that such nonaction, with that knowledge, was a waiver of the forfeiture. In Thompson v. Ins. Co., 169 Mo. 12, 25, it was held that where the agent of the company knew of additional insurance not taken out in the manner provided in the policy and did not object, it was a waiver of the forfeiture; the court remarking that if it was desired to rely upon the forfeiture, action should have been taken. So in Pelkington v. Ins. Co., 55 Mo. 172, it was held that if the agent knew of additional insurance and did not object, it was a waiver of the forfeiture on that account. And that it was the agent's duty to express his dissent when he learned of cause for a forfeiture, if he intended to enforce it. And so we held in the recent case of Polk v. Assurance Co., 90 S. W. 397, 114 Mo. App. 514.

But it is said that under the case of Gillum v. Fire Ass'n, 106 Mo. App. 673, the judgment in this case cannot be sustained. That, under the law as there stated, all prior and contemporaneous understandings between plaintiff and the defendant's agent became merged in the policy. On the other hand, we are cited to the cases of Bush v. Ins. Co., 85 Mo. App. 155, and Hanna v. Ins. Co., 109 Mo. App. 152, in support of the judgment. These, defendant contends, are not in harmony with the Gillum case. In the Gillum case, the policy, like the one in controversy, contained the iron-safe clause. The judgment was reversed and the cause remanded on account of an instruction given for the plaintiff which, in terms, di-

rected the jury to find for plaintiff if before the policy was issued the agent agreed with plaintiff that the iron-safe clause would be omitted from the policy. That, as stated by the presiding judge writing the opinion in that case, was a clear violation of one of the fundamental rules of law that all prior or contemporaneous agreements are conclusively presumed to be merged or included in the written contract finally executed. That instruction put the case to the jury, not upon a waiver by conduct after the policy was issued, but upon what was agreed to before the contract was finally embodied in the written policy. That, of course, could not be allowed without violating "one of the plainest and most beneficial rules of law." The criticism made of the instruction in the Gillum case is upheld in Ijams v. Assurance Society, 185 Mo. 466, 499. But neither the case of Bush v. Ins. Co., supra, nor Hanna v. Ins. Co., supra, are inconsistent with the Gillum or Ijams cases. It will be observed that in the Hanna case it was conceded by the parties that there was sufficient evidence of waiver to go to the jury. In the Bush case, the point, as now presented, was not suggested, and in consequence the statement made of that case is not broad enough to show certain prominent facts which therein appeared in evidence, which made of the case one of waiver as applied to contracts of this nature. The evidence in that case showed that the agent delivered the policy to the assured and then accepted a note due in six months for one-half of the premium and a check for the other half. And that, with knowledge that the assured did not keep and was not keeping an iron safe, cashed the check and did not return the note. Thus, a clear case of waiver was made out under the cases of Springfield Laundry Co. v. Ins. Co., Thompson v. Ins. Co., and Pelkington v. Ins. Co., supra.

It seems to us that the decisions, to which we have referred herein, were all made in recognition of well-understood principles of law. First, that all prior and con-

temporaneous conversations and understandings of the parties to a written contract, in the absence of fraud, accident or mistake, count for nothing as against the provisions of the contract which are finally reduced to writing. But that such rule is in no way contradictory of, and is in no way inconsistent with, the further rule that the obligations of a written contract may be waived by conduct of the parties occurring after its execution. If a contract includes provisions which, if not complied with, involve a forfeiture, and the party, for whose benefit the provisions were inserted, knowing the other party is not complying with them, makes no objection and acquiesces therein, he waives the forfeiture. [Authorities supra.] The waiver cannot rest alone on the agent's prior knowledge or understanding which is inconsistent with the writing afterwards made, for the contract is not then in existence. It is necessary that there be subsequent conduct which is inconsistent with an intention to insist on the forfeiture. If an agent for an insurance company at the time he solicits the insurance and delivers the policy is informed that the party solicited has no iron safe and that he will not procure one, and will not keep his books away from the store, yet, after the policy is delivered, accepts of a premium covering the continuing risk, and with such knowledge takes no exception to the continued violation of the forfeiture provision and takes no steps, by objection or otherwise, in recognition of his right of forfeiture, he will be deemed to have waived it; for he thereby causes the assured to believe the forfeiture will not be insisted upon. "If a party by his silence directly leads another to act to his injury, he will not be permitted, after the injury has happened, to then allege any thing to the contrary, for he, who will not speak when he should, will not be allowed to speak when he would." [Pelkington v. Ins. Co., supra.] Evidence of the agent's knowledge prior to the time of the execution of the written contract will not be received to vary or alter such contract; but, on

the subject of *waiver* of the contract, it can, in a proper case, be rightly admitted to connect with and aid in the proof that he after the execution of the contract had knowledge that the assured was not complying with the forfeiture provisions.

Under these views, objections to testimony made by defendant were not well taken; and there was no error in giving plaintiff's second instruction. While that instruction refers to knowledge of defendant's agent before the policy was issued and that the agent was informed that plaintiff would continue to do as he had in the past, yet, such reference to prior knowledge was for the purpose of connecting knowledge of the same condition existing after the policy was issued (of which there was evidence) and submitting the hypothesis of defendant, with such knowledge, collecting the premium on the policy and allowing it to run without objection or cancellation.

We do not discover any error materially affecting the merits of the controversy and hence affirm the judgment. All concur.