MARY P. MYTON, Respondent, v. THE FIDELITY &
CASUALTY COMPANY, Appellant.

Kansas City Court of Appeals, March 5, 1906.

**INDEMNITY INSURANCE: Litigation Covered: Estoppel: Assumption of Defense: Consent: Judgment.** An indemnity insurer in an action by attachment against the assured, where the service was by publication, under the terms of the policy entered the appearance of the assured, answered to the merits assuming the defense of the action, and subsequently agreed to a judgment against the assured for certain damages and the costs of the suit. *Held,* that without regard to the question whether the attachment costs and the attachment proceedings were covered by the terms of the policy, the insurer was liable to the assured for the costs of the attachment proceedings by reason of its assumption of the defense and its consent to a judgment for costs.

Appeal from Jasper Circuit Court.—*Hon. Howard Gray,* Judge.

AFFIRMED.

*H. W. Currey* and *Frank L. Forlow* for appellant.

(1)   The affidavit in attachment in B. H. and Sarah Ross v. Myton and Ethel S. Mining Company fails, entirely, to recite any grounds of attachment as required by section 190, Kansas Code (Dassler's Statutes of Kansas, 1901, sec. 4624), and therefore the seizure and subsequent holding of the property of the defendants was illegal and void. Hanley v. Headley, 10 Kans. 88. (2)   The purchaser of property attached and sold under an execution against the attached property, based on such attachment proceeding, takes no title. Waples on Proceeding In Rem, sec. 587-588; Waples on Attachment (2 Ed.), sec. 157; Wilson v. Arnold, 5 Mich. l. c. 105; Manley v. Headley, 10 Kan. l. c. 74; Dickerson v. Cowley, 15 Kans. 209; Implement Co. v. Wagon

Works, 58 Kans. 130-135; Fink v. Armstrong, 9 S. D. 255, 68 N. W. 740; During v. Warren, 44 N. W. 1068, 1 S. D. 35; Duxbury v. Dahle, 78 Minn. 427; Burnett v. McClure, 78 Mo. 676; Homes v. Clement, 64 Wis. 152; Bank v. Gaston, 40 Mo. App. 1. c. 122-31; Hargadine v. Van Horn, 72 Mo. 370; 3 A. & E. Pl. and Pr., 4; Nacht-rief v. Stoner, 1 Colo. 424; Hewitt v. Terry, 56 Mich. 591; Copehart v. Downing, 10 West Va. 130; Campbell v. Hall, 1 Kans. 1. c. 55, reprint 490; People ex rel. v. Blanchard, 61 Mich. 478; Van Fleet on Collateral At-tack, sec. 263. (3) The affidavit and writ of attach-ment no longer forms a part of an original proceeding, by which an action at law may be commenced. And the defendant, by virtue of this policy, did not owe the plaintiff, Mary P. Myton, the duty of defending said at-tachment. Ferguson v. Glidewell, 48 Ark. 200; Bund-rem v. Denn, 25 Kans. 430; Barton v. Wright, 3 Kans. 227; Miller v. Dixon, 2 Kan. App. 445; Elliott v. Mitchell, 3 Green (Iowa) 237, 239. (4) The defend-ant's consent, given in the most formal manner, could not give jurisdiction to render said judgment, nor give life to that which is a nullity. Dogan v. Cole, 63 Miss. 153; Sims v. Charleston, 3 W. Va. 415; Smith, Heddins & Co. v. Hackley, 44 Mo. App. 614. (5) The defend-ant, plaintiff herein, was not in the district court of Cherokee county, Kansas, on the 14th day of January, 1902 (Jan. term). A judgment rendered against a party not in court is void. Hargis v. Moore, 7 Kans. 416, reprint p. 250; State ex rel. v. Ross, 118 Mo. 65; Newton v. Newton, 32 Mo. App. 162.

*A. E. Spencer* and *McAntire & Scott* for respondent.

(1) Where in a suit of a sister State a court of competent jurisdiction acquires jurisdiction of the per-son of the defendant and a personal judgment is ren-dered by the court, the defendant cannot in another suit in this State attack that judgment. And by a more

powerful reason the judgment is conclusive where it appears to have been rendered upon confession or stipulation of the attacking party. Harbin v. Chiles, 20 Mo. 314; Warren v. Lusk, 16 Mo. 108-114; Harness v. Green, 19 Mo. 323; Murphy v. Smith, 86 Mo. 339; Thompson v. Elevator Co., 77 Mo. 522. (2) Appellant is not a stranger to the judgment which it now attacks collaterally, but on the contrary it admits it is a privy, though not in name a party. It also admits that the judgment was rendered upon agreement and stipulation in open court and that the court which rendered the judgment was a court of competent jurisdiction. Such judgment cannot in this suit be assailed by the appellant on the ground that there was no proper affidavit for attachment in the suit of Ross v. Myton in Kansas. Sloan v. Mitchell, 84 Mo. 546; Meyers v. Miller, 55 Mo. App. 338; McClellan v. Ry., 103 Mo. 295; Beckner v. McLinn, 107 Mo. 289; McGurry v. Wall, 122 Mo. 614; Livingston v. Allen, 83 Mo. App. 295; Burt v. Alexander, 15 Mo. App. 181; Forder v. Davis, 38 Mo. 108; Puntz v. Kuester, 41 Mo. 447; Johnson v. Beazley, 65 Mo. 250; Baker v. Baker, 70 Mo. 136; Faulkerson v. Davenport, 70 Mo. 546; State v. Evans, 83 Mo. 319; Yates v. Johnson, 87 Mo. 213; Karnes v. Alexander, 92 Mo. 660; McFall v. Dempsey, 43 Mo. App. 373; Knoll v. Woellin, 13 Mo. App. 275; Pickering v. Templeton, 2 Mo. App. 432; Bank v. Hughes, 10 Mo. App. 11; Casler v. Chase, 160 Mo. 424-425; Estes v. Nell, 163 Mo. 395; Brown v. Appelman, 83 Mo. App. 79. (3) Where the defendant in an attachment suit makes no plea in abatement, he thereby confesses the attachment lien even though he had not made any stipulation respecting the attachment. Muskgrove v. Mott, 90 Mo. 107. (4) The filing of an answer to the merits in an attachment suit is a waiver of the plea in abatement. Audenired v. Hall, 45 Mo. App. 204; Harty v. Schuman, 13 Mo. 547; Cannon v. McManus, 17 Mo. 345; Fordyce v. Haythorne, 57 Mo. 120; Greene v. Craig, 47 Mo. 90; McDonald v. Fist, 60

Mo. 172; Little v. Harrington, 71 Mo. 390. (5) Appellant is therefore bound by the actions of its attorneys in the case of Ross v. Myton. Molten v. Booker, 115 Mass. 36; Bonnifield v. Thorpe, 71 Fed. 924. (6) Where there is a personal appearance, as there was in the suit in which the judgment now attacked by appellant was rendered, there could be no special judgment *in rem,* the judgment must be general. Payne v. O'Shea, 84 Mo. 129; Borum v. Reed, 73 Mo. 461. (7) A court is authorized to render a judgment for costs in carrying out a compromise of parties in pursuance of a stipulation or the consent of the parties given in open court. Murphy v. Smith, 86 Mo. 338; Thompson v. Elevator Co., 77 Mo. 522. (8) It is contrary to the first principles of justice that a party should obtain an advantage over another by confessing a judgment against her, thus admitting its validity, and in a subsequent proceeding upon such judgment, claim that at the time it was rendered the court has no jurisdiction and the judgment was therefore not valid. Davis v. Wakelee, 156 U. S. Sup. 689-692. The payment of a part of the judgment will not discharge the whole, even though it purports to be complete satisfaction thereof. Winter v. Cable Co., 160 Mo. 189; K. C., M. & B. Co. v. Ry. 151 Mo. 390; St. Joseph v. Railway, 116 Mo. 636; Allen v. Hickery, 156 Mo. 59. (9) The objection that a liability is not within the term of the policy of insurance may, of course, be waived; and where the insurer undertakes the defense of an action by the injured person against the insured, with full information, it will be deemed to have waived the point that the liability was not within the terms of the insurance policy. 11 Am. and Eng. Ency. Law (2 Ed.), p. 13; Cement Co. v. Ins. Co. 11 N. Y. App. Div. 411; Titus v. Ins. Co., 81 N. Y. App. 410; McNally v. Ins. Co., 137 N. Y. 389; Robey v. Ins. Co., 120 N. Y. 510; Trippe v. Fund Society, 140 N. Y. 23; Fuller Bros. Co. v. Fidelity & Casualty Co., 94 Mo. App. 490; LaForce

v. Insurance Co., 43 Mo. App. 518; Williams v. Santa Fe Co., 153 Mo. 519; Fink v. Ins. Co., 66 Mo. App. 513.

JOHNSON, J.—Action upon a policy of insurance. The material facts are not disputed and may be stated as follows: On October 2, 1899, defendant issued the policy under consideration to a Mr. Sully, the owner of certain mines in Galena, Cherokee county, Kansas. Sully, in December following, sold the property to plaintiff and assigned the policy to her with the consent of defendant. The undertaking of the insurer as disclosed by the terms of the policy was to indemnify the insured "Against loss from common law or statutory liability for damages on account of bodily injuries, fatal or nonfatal, accidentally suffered within the period of this policy by any employee or employees of the assured while on duty at the places and in the occupation mentioned in the schedule, hereinafter given, in and during the continuance of the work described in the said schedule."

Among the provisions of the policy, these are material to the present inquiry:

"If, thereafter, any suit is brought against the assured to enforce a claim for damages on account of an accident covered by this policy, the assured shall immediately forward to the home office of the company every summons or other process as soon as the same shall have been served on him, and the company will at its own cost defend against such proceeding in the name and on behalf of the assured (and pay) the indemnity or settle the same, unless it shall elect to pay to the assured the indemnity provided for in clause A of special agreements, as limited therein."

"The assured shall not settle any claim except at his own cost, nor incur any expense, nor interfere with any negotiation for settlement, or in any legal proceeding, without the consent of the company previously given in writing. . . . The assured, when requested by

the company shall aid in securing information, evidence and the attendance of witnesses, and in effecting settlements and in prosecuting appeals.

"No action shall lie against the company as respects any loss under this policy unless it shall be brought by the assured himself to reimburse him for loss actually sustained and paid by him in satisfaction of a judgment," etc.

On May 3, 1900, while the policy was in force, a laborer named Ross, employed in the mine by plaintiff, was fatally injured. Shortly after his death, his father and mother, B. H. and Sarah Ross, brought suit in the district court of Cherokee county, Kansas, a court of competent jurisdiction, against the assured, alleging in the petition filed that the death of their son was the direct result of the negligence of his said employer. The deceased was an unmarried minor and, under the Kansas law, a right of action such as that pleaded vested in his parents.

The defendant there (plaintiff here) was a non-resident of the State of Kansas and the plaintiffs in that suit, at the commencement thereof, procured the issuance of a writ of attachment and caused the same to be levied by the sheriff upon a large amount of personal property owned by the defendant Myton and used in the operation of the said mine. The Kansas law authorized an attachment in aid of an action of this character, but required as a step preliminary thereto the filing of an attachment affidavit containing, among other requisite averments, the statement of one or more statutory, grounds. Non-residence in the State is one of such grounds. An affidavit was filed, but it failed to allege any ground for attachment. Nevertheless, the writ was issued and defendant Myton's property was seized and held thereunder by the sheriff until the final termination of that suit. The only service upon the defendant Myton was by publication. The insurance company (defendant here) was notified of the bringing of the Kansas suit

and, conceding that the liability, if any, was one covered by the policy, immediately assumed entire charge of the defense. It took no steps to contest the jurisdiction of the Kansas Court on account of the defective affidavit and filed no motion or plea in the attachment proceeding, but answered to the merits of the principal suit in the name of the defendant Myton and, thereby, entered her personal appearance. After the suit had been pending for more than a year, the insurance company entered into a stipulation with the plaintiffs therein for a settlement of the controversy, the terms of which appear in the judgment, which the parties had entered by consent, on October 17, 1901. It is as follows:

"Now, on this day, this cause came on for trial, the plaintiffs herein appeared by their attorneys . . . and the defendants herein by . . . . their attorneys, now a jury being waived, the trial of this cause was submitted to the court; and, thereupon, as per stipulation, in open court it was agreed that the plaintiffs should have judgment against the defendants for the sum of $700 and the costs of suit.

"It is therefore considered, ordered, adjudged and decreed that the plaintiffs, B. H. Ross and Sarah E. Ross, do have and recover of and from the defendant . . . Mary Myton the sum of seven hundred dollars and the costs of this suit, taxed at $1201.90, and that the attachment lien herein issued by the clerk of this court upon the 11th day of October, 1906, be preserved and continued, and that an order of sale issue for the sale of the attached property herein, after a period of thirty days from this date; that the question of fees for guarding the property be hereafter determined by the court at some later day of this term of this court."

The costs amounting to $1201.90 were composed of these items:

| | |
|---|---:|
| Clerk's Costs..................................... | $   28.00 |
| Sheriff's Costs ................................... | 22.00 |
| Sheriff's Costs, Guard Hire..................... | 1113.90 |

| | |
|---|---|
| Appraiser's Fees...... .... ...... ........ | 4.00 |
| Printer's Fee......... ...... ........ | 10.00 |
| Plaintiffs' Witnesses.... .... .... ........ | 24.00 |

Total         $1201.90

The insurance company satisfied the judgment of $700.00 on November 11, 1901, and paid these items of costs—Clerk's Costs $28.00, Sheriff's Costs $22.00, and Plaintiffs' Witnesses $24.00; but refused to pay the remaining items of Sheriff's Costs, Guard Hire $1113.90, Printer's Fee $10.00, and Appraiser's Fee $4.00. At the January term following, the court heard the application for an order retaxing sheriff's costs guarding the attached property and reduced the amount of those charged to $900.00. Myton, under threat of having her property sold under execution, was compelled to pay the costs of $914.00, which the insurance company refused to pay, and brought the present suit to recover the amount so expended. The cause of action pleaded in her petition is founded upon the alleged obligation of defendant to pay the costs incurred in the attachment proceeding in the Kansas case.

In its answer, defendant did not interpose any defense based upon the alleged invalidity of the attachment lien resulting from the insufficiency of the attachment affidavit, but sought to escape liability under the contention appearing in the following paragraph of the answer "that under the laws of the State of Kansas, neither the affidavit in attachment, the order of attachment, nor the writ of attachment constitutes any part, or are regarded as embraced in the pleadings in the said action of B. H. Ross and Sarah E. Ross against the said . . . . Mary P. Myton; and that said ancillary proceeding in no way affected the issues between the said· B. H. Ross and Sarah E. Ross, . . . and Mary P. Myton in the aforesaid suit for the negligent killing of their son, J. H. Ross; and defendant avers that under and by virtue

117 App.—29

of the contract of indemnity expressed in the foregoing insurance policy, this defendant was under no obligations to defend against said attachment or to release the said defendants,' . . . Mary P. Myton's property from the levy of the said attachment or to interfere or intermeddle with the proceeding in re of the said B. H. Ross and Sarah E. Ross against the property of . . . Mary P. Myton in the ancillary proceeding aforesaid, and that no right of action accrued to the plaintiff by reason of the failure of the defendant to pay the amount of money which the district court of Cherokee county, Kansas, in the aforesaid ancillary proceeding taxed against the said . . . Mary P. Myton for the care and preservation of their said property."

A jury was waived and the court, upon hearing, gave judgment for plaintiff, from which defendant appealed.

Among the declarations of law asked by defendant and refused by the court is one declaring that by reason of the infirmity in the attachment affidavit the Kansas court "had no jurisdiction to issue an attachment against the property. . . . and that the levy thereon was wholly void: that the plaintiff, Mary P. Myton, was not compelled to pay any judgment rendered against her property by reason of said attachment and that defendant is not liable under its contract of insurance and indemnity for the payment of the judgment rendered," etc. The argument advanced here by defendant is suggested in these quotations from the answer and instruction, and thus may be summarized:

First. The attachment was but an auxiliary proceeding engrafted upon the principal suit and therefore, even if properly brought, was not one directly involving the merits of the cause of action, for which, if sustained, defendant under the terms of the policy stood liable.

Second. The attachment affidavit, in failing to state any ground for attachment, was fatally defective: the court was without jurisdiction to issue the writ of attachment; the sheriff in seizing and holding the prop-

erty of the assured thereunder was a trespasser; the judgment sustaining the attachment lien was a nullity and could be attacked, either in a direct or collateral proceeding. Consequently, plaintiff did not pay the costs of this void proceeding under legal compulsion, but, as a mere volunteer, and therefore defendant should not be held liable to reimburse plaintiff, even though it might be said that defendant's duty under the policy required it to defend and indemnify plaintiff against loss on account of a valid attachment issued in aid of a suit covered by the policy.

We will concede for argument, without so deciding, that the question now urged may be raised in a collateral proceeding, such as the one before us; that the attachment affidavit was so defective that the Kansas court was without jurisdiction to issue the writ; that the caption and custody of plaintiff's property was unlawful; that the attachment was ancillary to, and not an integral part of the action on the merits, and that prior to the making of the settlement agreement the Kansas Court had no jurisdiction to assess any of the costs incurred under a void proceeding against the attachment defendant—and yet, despite these concessions, it is very clear the judgment should be sustained.

Defendant entirely ignores the effect of its own conduct. In the assertion of its contract right, it took out of plaintiff's hands the defense of the suit brought against her and assumed and exercised the exclusive management thereof. According to defendant's contention, plaintiff was under no compulsion to appear at all in the Kansas court, for that tribunal had acquired no jurisdiction over her or her property, but defendant, acting in plaintiff's name, subjected her to the jurisdiction of that court and, in pleading to the merits of the suit, conceded, so far as it could, the validity of the attachment lien asserted against her property. Instead of leaving plaintiff free to obtain the release of her prop-

erty from a void levy, defendant, acting under its assumed right to control the entire litigation, in effect pushed plaintiff aside and permitted her property to remain tied up for more than a year. It must be borne in mind that defendant was not only in privity with plaintiff in that suit, but, as between them, was the real defendant and, in thus dealing so cavalierly with plaintiff's property, we must assume that defendant was acting in its own interest and sought to benefit itself by using the invalidity of the attachment proceedings as a weapon with which to coerce the plaintiffs in that suit into a compromise agreement favorable to defendant. But, however this may be, it is overshadowed in importance by what occurred in the settlement of that case. At that time, the costs of the attachment amounted to over eleven hundred dollars and were increasing daily. The plaintiffs in that suit were confronted with the likelihood of having to pay those costs regardless of the result in the principal suit. In this situation, they very naturally obtained from defendant, acting as the spokesman of plaintiff, the agreement to free them from that liability as a part of the consideration they exacted for the satisfaction of their claim for damages. The judgment entered by the consent of the parties was, in effect, a judicial pronouncement of the agreement made by them. Therefore, the obligation of the plaintiff here to pay those costs rested upon her contract merged into the judgment and was in nowise affected by any question relating to the validity of the attachment lien, nor by the fact that before the settlement agreement was made the costs could not be assessed against her legally; and defendant's obligation to plaintiff became co-extensive with that of hers to the plaintiff's in the Kansas suit because of the fact, if for no other reason, that it negotiated and made the very agreement, under which the attachment costs were to be treated, a part of the consideration for the satisfaction of the cause of action. Thus, defendant's

liability to reimburse plaintiff may be placed upon two grounds:

First. By its course of conduct preceding the settlement of the Kansas suit, as hereinbefore outlined, it waived the objection that the liability for the attachment costs was not included within the terms of its policy. [11 A. & E. Ency. of Law, 13; Cement Co. v. Ins. Co., 11 N. Y. App. Div. 411; Roby v. Ins. Co., 120 N. Y. 510; Fuller v. Casualty Co., 94 Mo. App. 490; Davis v. Wakelee, 156 U. S. 680; Riley v. Ins. Co., 117 Mo. App. 229; Polk v. Ins. Co., 114 Mo. App. 514.]

And second. In the settlement made by it, as evidenced by the consent judgment, it expressly made these costs an integral part of a judgment for the enforcement of a cause of action concededly within the terms of its policy and thereby became bound for their payment by its own contract. [Murphy v. Smith, 86 Mo. l. c. 338; Thompson v. Elevator Co., 77 Mo. 520; Beckner v. McLinn, 107 Mo. l. c. 288; Bent v. Alexander, 15 Mo. App. 181; Casler v. Chase, 160 Mo. l. c. 425; Brown v. Appleman, 83 Mo. App. 79.]

We have considered other points raised by defendant and find the record free from substantial error. The judgment is for the right party and is affirmed. All concur.