## L. M. WEINBERGER, Respondent, v. INSURANCE COMPANY OF NORTH AMERICA, Appellant.

**Kansas City Court of Appeals, April 7, 1913.**

1. **FIRE INSURANCE: Waiver: Forfeiture.** The plaintiff sued to recover on two policies of fire insurance, issued by the defendant, covering a general stock of merchandise owned by plaintiff and contained in a general store operated by her. At the time the agent of the defendant wrote the application and accepted the premium, he was aware that the plaintiff was not complying with the warranties of the policy. *Held,* that the defendant by its silence, and with knowledge that the other party was not complying with conditions of the policy, waived the right of forfeiture.

2. ———: ———: ———: **Contracts.** When a contract includes provisions which, if not complied with, involve a forfeiture and the party for whose benefit the provisions were inserted, knowing the other party is not complying with them, makes no objection and acquiesces therein, he waives the forfeiture.

3. ———: ———: **Estoppel.** When a party by his silence directly leads another to act to his injury, he will not be permitted, after the injury has happened, to then allege anything to the contrary, for he, who will not speak when he should, will not be allowed to speak when he would.

Appeal from Clay Circuit Court.—*Hon. Francis H. Trimble,* Judge.

AFFIRMED.

*Fyke & Snider,* and *Simrall & Simrall* for appellant.

(1) It was error to admit testimony of the alleged conversation by Weinberger with defendant's agent as to his intention with respect to leaving plaintiff's books in the store if he walked home. This occurred about a year before the policies sued on were issued. Rodgers v. Ins., 155 Mo. App. 276; Hutch-

inson v. Ins. Co., 21 Mo. 97; Deitz v. Ins. Co., 38 Mo. 85; Rothschild v. Ins. Co., 62 Mo. 356; Carpenter v. Ins. Co., 16 Pet. 494; Insurance Co. v. Mowry, 96 U. S. 544; Insurance Co. v. Hurd, 37 Mich. 11; Insurance Co. v. Norwood, 57 Kan. 610; Kimbell v. Ins. Co., 8 Gray, 43; Slobodiski v. Ins. Co., 72 N. W. (Neb.) 483; Turner v. Ins. Co., 16 Fed. 454; Reduction Co. v. Ins. Co., 138 Fed 497; Gray v. Ins. Co., 155 N. Y. 188; Gillum v. Ins. Co., 160 Mo. App. 673. (2) The witnesses, Wise and Searcy, made it clear their testimony and expressions of opinion were not based upon any facts, examination or knowledge of the subject concerning which they were testifying, and that should have been excluded. (3) Defendant's instruction that the iron safe clause was a valid condition and binding upon plaintiff should have been given. Keet-Rountree v. Ins. Co., 100 Mo. App. 504; Crigler v. Ins. Co., 49 Mo. App. 11; Gillum v. Fire Assn.. 106 Mo. App. 673. (4) Plaintiff was not entitled to recover under each policy more than that policy's proportionate part of three-fourths of the value of the property destroyed immediately before the fire. Upon this point the court's instructions were wrong and misleading. Surface v. Ins. Co., 157 Mo. App. 570.

*Sharp & Sharp* for respondent.

JOHNSON, J.—This is an action on two policies of fire insurance covering a general stock of merchandise owned by plaintiff and contained in a general store operated by her in the town of Vibbard. The stock was completely destroyed by fire during the currency of the policies one of which, issued April 26, 1912, was for $1000 and the other issued January 8, 1912, for $500.

Each policy contained the agreement "that in the event of loss or damage by fire to the property

covered by this policy, this company shall not be liable for an amount greater than three-fourths of the actual cash market value of each item of said property," etc., and further provided: "1st. That the insured will take a complete itemized inventory of stock on hand at least once in each calendar year, and unless such inventory has been taken within twelve calendar months prior to the date of this policy, the same shall be taken in detail within thirty days thereof, or this policy shall be then null and void, and on demand of the insured the unearned premium from that date shall be returned. 2nd. That the insured shall keep a set of books which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments both for cash and credit, from the date of such inventory and during the continuance of this policy. 3rd. The insured will keep such books and inventory and also the last preceding inventory, if such has been taken, securely locked in a fire-proof safe at night, and at all times when the building mentioned in the policy is not actually open for business, or failing in this, the insured will keep such books and inventories in some place not exposed to a fire which would destroy the aforesaid building; and in case of loss, the insured specifically warrants, agrees and covenants to produce such books and inventories for the inspection of this company."

The policy dated April 26, 1912, was a renewal of one for the same amount issued a year before. Plaintiff embarked in business in Vibbard with a stock of goods she had purchased of a merchant in a nearby town. Her husband was her agent and the manager of the business and he increased the stock from time to time by additions of new goods purchased from wholesale merchants. He conducted the business some time without carrying insurance on the stock but in April, 1911, applied to defendant's

agent at Excelsior Springs for a policy of insurance. In response to the application the agent inspected the stock the market value of which was about $1700, and was informed by the manager that plaintiff intended to carry insurance to the amount of $1500 but desired a policy for only $1000 at that time and that later she would take an additional policy for $500. The manager testified:

"Mr. Thomas (defendant's agent) came in the store to inspect it and I told him I wanted $1500 but didn't feel like having him write up more than $1000, that I couldn't go to the expense of paying the premium then, so I would just take $1000 and he told me what the rate would be after going and talking to a gentleman he had with him, and then he told me he would write me the policy, and then asked me whether I had an invoice and kept books, and I told him all the books I kept was a cash account and expense, I was not doing any credit business and my inventory had been taken just a few days prior and he said that was all right; 'where do you keep your books?' I showed him on the counter, I had a little place where I kept my books, and he said, 'Where do you keep them at night?' and I told him I took them home whenever I rode, and when I walked I almost invariably left them there. I usually drove back and forth most of the time. I told him I thought the value of the stock was about $1700 at that time. He said I ought to have a safe and keep these things locked up in case of fire and I told him I had no safe and, after telling him that I was carrying them home most of the time, he says that will be all right, not likely if you leave them here any accident would occur at the time. He didn't see the books at that time; he was not asked to inspect or look at them. He told me he would write me the insurance, that he would write a policy for $1000 and that whenever I got ready for the further $500 to let him know and he would send me another policy for the

additional $500. When I got ready for the increase I sent him word and he came out and brought the policy.''

Following this conversation defendant issued a policy to plaintiff dated April 26, 1911, and on the 8th day of January, issued an additional policy for $500. Plaintiff paid the premiums on both policies and also the premium on the policy issued in renewal of the first one. These premiums were accepted and retained by defendant though the agent who countersigned and delivered the policies had knowledge from the first of the fact that plaintiff was not complying with the iron safe clause and intended not to comply with it. The agent introduced as a witness by defendant denied the conversation relating to the iron safe clause and stated that he had no knowledge of the violation of that condition of the policy prior to the loss. It is conceded that plaintiff did not perform that condition and the principal issue presented by the pleadings and evidence is whether or not there was a waiver by defendant of its right to forfeit the policy on the ground of plaintiff's non-observance of the iron safe clause. Counsel for defendant argue that the court erred in admitting over their objection, testimony of the conversation relating to plaintiff's intention to keep the books in the store at night on certain occasions. Since this conversation occurred before the issuance of the first policy we agree with defendant that it can be given no contractual effect. The elementary rule of the law of contracts that all prior and contemporaneous oral agreements between the parties become merged in the written contract applies as well to contracts of insurance as to other classes of contracts. In accepting the policy plaintiff agreed to keep her books securely locked in a fire-proof safe at night or to keep them in some place not exposed to a fire that would destroy the property insured. This agreement was in the nature of a warranty and plaintiff would

not be heard to say that its contractual potency was destroyed by a prior oral agreement. We do not understand that she is attempting to stand on such ground. She concedes that the oral agreement cannot be accorded the effect of abrogating or varying the terms of the policy but her position is that the testimony is admissible on the issue of waiver for the reason that it tended to prove that defendant, when it received and retained the premiums paid by plaintiff, had knowledge of the existence of the ground of forfeiture and without objection or warning to plaintiff continued to act as though the insurance were in force until the loss occurred when for the first time, it complained of plaintiff's breach of contract.

The rule is well settled that "if a contract includes provisions which, if not complied with, involve a forfeiture, and the party for whose benefit the provisions were inserted, knowing the other party is not complying with them, makes no objection and acquiesces therein, he waives the forfeiture." [Riley v. Ins. Co., 117 Mo. App. 229, and cases cited.] Further we said in the case just cited: "The waiver cannot rest alone on the agent's prior knowledge or understanding which is inconsistent with the writing afterwards made, for the contract is not then in existence. It is necessary that there be subsequent conduct which is inconsistent with an intention to insist on the forfeiture. If an agent for an insurance company at the time he solicits the insurance and delivers the policy is informed that the party solicited has no iron safe and that he will not procure one, and will not keep his books away from the store, yet, after the policy is delivered, accepts of a premium covering the continuing risk, and with such knowledge takes no exception to the continued violation of the forfeiture provision and takes no steps, by objection or otherwise, in recognition of his right of forfeiture, he will be deemed to have waived it; for he thereby causes the assured to believe the

forfeiture will not be insisted upon. 'If a party by his silence directly leads another to act to his injury, he will not be permitted, after the injury has happened, to then allege anything to the contrary, for he, who will not speak when he should, will not be allowed to speak when he would.' [Pelkington v. Ins. Co., supra.] Evidence of the agent's knowledge prior to the time of the execution of the written contracts will not be received to vary or alter such contract; but, on the subject of waiver of the contract, it can, in a proper case, be rightly admitted to connect with and aid in the proof that he, after the execution of the contract, had knowledge that the assured was not complying with the forfeiture provisions.''

We reaffirm that statement of the law and hold that it is conclusive of the question under consideration. The evidence was properly admitted because of its bearing on the subject of a waiver of the contract. The agent who represented defendant in the transaction was its *alter ego* and if he knew that plaintiff had no safe in the store and did not intend to keep one there, his knowledge was defendant's knowledge and if, with such knowledge, defendant accepted and retained the premiums without objection to the course of plaintiff, it would be most unjust to allow it to bring forth the apparently abandoned ground of forfeiture as a defense to an action on the policy.

The point made by defendant that the court erred in refusing the only instruction asked by defendant is sufficiently answered in what we have said on the subject of waiver. The instruction is not in line with the view of the law we entertain and was properly refused.

Plaintiff's books were destroyed in the fire and she was compelled to prove the items of her loss by her manager and a clerk who immediately after the fire prepared from memory an itemized list of the goods destroyed. The manager testified to the accu-

racy of the statement and we think the court did not err in allowing him to use it while he was on the stand for the purpose of refreshing his memory.

The court on its own motion gave instructions that fully and properly covered and defined the issues of fact. Defendant offers but one objection to these instructions and it obviously is not well founded. The cause was tried without prejudicial error and the judgment is affirmed.

*Ellison, P. J.,* concurs; *Trimble, J.,* not sitting, having presided at the trial.