M’Girk, C. J.,
delivered the opinion of the Court.*
An action of debt was brought by Singleton to the use of Gibbs, against the administrator of Allen. The defendant pleaded payment ;• a verdict and judgment were given against him, and he appealed to this Court. On the trial, the plaintiff gave in evidence his bond, and there closed his testimony y the defendant then moved the Court to instruct the jury, that unless the plaintiff had proved to. them, by other; *327 evidence than the mere possession and production of the "bond, that Gibbs was the owner of the bond, the plaintiff could not recover, which was refused.
The question raised is a narrow one. It is argued that Gibbs is the real owner Of the bond, and the real plaintiff, and as he claims to have the right to the money he must show his claim is true. In this case Gibbs was the possessor of the bond.
That possession, prima facie, gave him a right to receive the money from the obligor, if he chose to pay it. This possession also gave him the power to sue for the money in the name of the obligee, and to prosecute and defend such suit; all the defendant has a right to demand, is that the suit and recovery should be such that he might plead it in bar to a future action. In this case, the suit is in the name of the obligee ; a recovery in his name would undoubtedly protect him against a future recovery on the same note, for the suit would be brought in the name of an assignee, or the obligee.
It is not for the defendant to object, that the obligee has seen fit to put this note into the hands of another and permit him to sue for the money to his use; he has nothing to do with that. The possession of the note is evidence enough of the fact that Gibbs has a right to control the suit and receive the money.
The defendant then entered on his defence: he offered a receipt in evidence, which went to show payment of the whole note, made by the wife of the administrator before her marriage with him; which payment purported to be made to one Hamilton, of whom Gibbs purchased the note, and before Gibbs became the owner. The evidence with regard to this receipt was, that on the 21st day of March, 1831, one Mitchell was called on by Hamilton to make out an invoice of goods of Hamilton to be sold to Singleton, and that the note sued on was to be taken, as part payment for the goods ; he did so, and the witness thinks on the 24th the invoice was completed, the goods delivered, and the note handed over to Hamilton, and that Hamilton left the country on the 27th with a drove of horses. The receipt bore date the 19th of March. The defendant introduced a witness who swore that he had frequently seen Hamilton write, and that he believed the signature to the receipt was his. Other witnesses were introduced on both sides, about equal in number, to prove and disprove the hand writing to the reeeipt3 among others, the administrator Mann was introduced without objection, who swore, that before Ms intermarriage with Pamelia Allen, and before he took out letters of administration, he was called on by the said Pamelia to write a receipt for her, which he did, and he wrote the one offered in evidence ; that Hamilton was then at the house of the widow Allen, and told her to prepare the receipt and he would sign it; that Hamilton and Pamelia had a long settlement of the debts of Hamilton to the estate of her deceased husband. Hamilton said he would return in a few days, and sign the receipt when she had prepared it; that Hamilton did return in two or three days after the receipt was written, and asked if the receipt was written and ready; that Hamilton and Pamelia went into the dining-room; that Pamelia came into the bar-room where witness was then attending to some persons; that she took out an ink-stand, borrowed some money from him, and re-entered the room. In a short time the parties came out, and Hamilton observed that they had-settled, and that he had signed the receipt against the bond. Witness also says, the receipt was dated on the day it was written, and that from his knowledge of the hand writing of Hamilton, having frequently seen him write, he believed the signature to he his. He did not see Hamilton sign the receipt, his attention being called to the guests who entered into the room. Witness was at *328 this time a har-keeper to Pamelia Allen, the widow of Samuel Allen, the maker of the bond. It was also proved that at this time, Pamelia, the widow, was the sole devisee of Samuel Allen, deceased.
One Turgell swore that he heard Singleton say, that he took Hamilton to Mrs. Allen before the bond became due, and told her that he had transferred the bond to Hamilton, and that she was authorized to pay the money to him; when this was done, the witness does not say. This man’s testimony was impeached by a witness, who swore that some of the neighbors thought him a bad man, and others did not.
One Crocker swore, that in December, 1831, or January, 1832, the widow showed him the receipt in question, hut folded the date and signature under. He told her, in reference to some remarks she made about proof of the signature, that if that was true, there would be no difficulty about proving the hand writing of Hamilton. That he afterwards saw the receipt and took it to the light, and saw in a minute the signature was not Hamilton’s. It was also proved, that some of the witnesses on the part of the plaintiff) were hostile to the defendant and wife. The plaintiff then proved by one Whaley, that on the 26th of March, 1831, Hamilton sold the bond to Gibbs; that before this sale he went to Mrs. Allen, and she told him not to buy this bond, if he did not want a law suit; that the bond was given by her husband, Allen, for a lot, and that part of the houses were on the wrong lot; and that he does not recollect that she assigned any other reason why he should not bay the bond. The defendant objected lo the introduction of these declarations of Pamelia Allen; the Court permitted the testimony to go to the jury.
Mann, the plaintiff in error, assigns for error, first, that the Court erred in refusing him a new trial. On this point we see no reason why the judgment should be reversed ; there was testimony on both sides, the evidence against the validity of the receipt was the strongest. It seems to us, the rule by which we ought to be governed is this: where the testimony is equal in the Circuit Court, then no new trial ought to be granted.
When we see the testimony is stronger against the verdict than it is for it, still that is not any reason why we should interfere. It should strongly preponderate: so far from that being true, we think the evidence strongly preponderates in favor of the verdict. The next question is, did the Court err in admitting the declarations of Mrs. Mann, the wife of the administrator, to be given in evidence?
It is true, as argued by the counsel for Mann, that the declarations of a wife cannot he given in evidence for nor against the husband, where he is plaintiff or defendant.
By the statute of this State, Rev. Code, c. 102, the administrator is expressly made -competent with regard to all facts which occurred before his administration commenced. This question, however, is not the one raised by the record. It is argued that the present wife of the administrator, is to be viewed in the light of an agent. On the other side, it is insisted when the declarations were made, she was not the agent for the administrator, for then no administration existed. This latter fact is true, hut that will not alter the case:
To understand this point correctly, the following points may be laid down as indisputable law:
First. That every person, in general, may make an agent to do that for him, which was inconvenient for him to do himself.
*329 Second. A man may make his wife his agent.
Third. That whatever the agent does and says, in relation to the act hy him to he performed, is a part of the res gesta, if done or said while the transaction is passing.
Eourth. That the acts of the agent hind the principal, though some should he to his advantage, and some not so.
Eifth. That the proof of agency may he hy matter ex post facto. To this point see 2 Starkie 57-8. Let us test this case hy these rules. In this case, the wife, when she made the declarations given in evidence, was the sole devisee of Allen, the husband. It was her interest to resist all claims not well founded. The defendant now sets up a payment, which the wife made, as a discharge tó a bond made hy the intestate; he claims this payment as a good one ; for the purpose of the payment, he chooses to consider her as the agent, hut when the question is raised, whether, in fact, this payment was or was not made; whether the receipt is a forgery or not, he objects that as to her declarations and conduct, while the thing was transacting, she is not to be considered as agent.
The declarations of a wife made at the time of effecting a policy of insurance on her life, as to the state of her health, are considered as facts, and may be given in evidence. 2 Starkie 713. Declarations of the wife, as agent of the husband, are admissiblejustasthoseof any other agent are: 2 Starkie 713, 10 John. R. 88. The case in Johnson was a case where the husband and wife separated hy articles. The husband covenanted with a trustee to deliver to the wife a carriage and horses; and on a suit between the husband and trustee, the wife’s declarations that she had received the carriage and horses, were admitted on the ground that as to that matter, the wife as the agent to receive, of course was competent to acknowledge the fact. In this case, a strong contest exists about the fact, whether or not the receipt was forged. The present wife made herself an actress in the transaction. The defendant now sets up the act to his benefit, he thereby makes her the agent by recognition, after the act is done. It would be contrary to every rule of justice to let him select those things which go to his benefit, and reject all that is against him. The declarations were important to show the receipt was a forgery. Mann’s evidence pretends, that on the 19th day of March, the receipt was written; that in two or three days it was signed and the money paid ; that would make the payment on the 23d. The proof is clear that Hamilton did not get the note till the 24th. After this, the widow was found advising a witness not to buy the note, because the consideration had failed; if this be true, it raised a strong presumption that Mann’s testimony about the receipt is false. In this point of view the declarations of the wife were relevant and important, and we see no objections to their competency.

 Wash, Judge, absent from indisposition.,