ROYLE MINING COMPANY, Respondent, v. THE FIDELITY & CASUALTY COMPANY OF NEW YORK, Appellant.

Springfield Court of Appeals, December 4, 1911. Motion for Rehearing Overruled January 8, 1912.

1. **INSURANCE:** Employers' Indemnity Insurance: Taking Charge of Litigation: Estoppel: Waiver. In an action on an employer's indemnity policy in which the insurance company agreed to indemnify plaintiff against any loss from common-law liability for damages on account of injury suffered by any employee of the plaintiff, while on duty, it appeared that the plaintiff, a mining company, had been compelled to pay a judgment against it in an action by an employee, who recovered on account of the failure of the mining company to observe the "prop" statute. *Held*, that if defendant took charge of the defense of this damage suit without giving plaintiff any explanation of its action or notice of its reservations, then its silence was an estoppel and that under the evidence this was a question for the jury.

2. **APPEAL AND ERROR: Constitutional Question.** In determining whether or not a constitutional question was raised so as to give the Supreme Court jurisdiction of the appeal, the question to be decided and not the result of the decision, gives the jurisdiction and the mere allegations that to hold the defendant liable in a suit is in violation of certain sections of the Constitution are not sufficient to raise a constitutional question.

3. **EMPLOYER'S INDEMNITY INSURANCE: Taking Charge of Litigation: Estoppel: Presumption as to Prejudice.** Where the insurance company, under an employer's indemnity policy, assumes the control of the defense of an action brought by an injured employee against the insured, with full information of the character of the action, it will be deemed to have waived the objection that the liability was not within the terms of the insurance policy, unless upon assuming charge of the litigation it notified the insured that it did not intend to waive such objection, and in an action by the insured upon the policy, where the defendant seeks to relieve itself of liability because of some exemptions under the terms of the policy, the principle of estoppel will be invoked and plaintiff will be conclusively presumed to have been prejudiced by defendant's conduct and inconsistent position, and need not be put to the proof that it could have achieved better results had defendant not interfered.

4. **EVIDENCE: Letters Not Delivered.** Where defendant sought to introduce letters written to the plaintiff, but it did not show that the letters had been deposited in the postoffice, stamped and addressed to the plaintiff, or that they had been personally delivered to plaintiff, such letters were properly excluded.

5. **PRINCIPAL AND AGENT: Notice to Agent: Ministerial Capacity.** The general rule is that notice to an agent is notice to his principal, but such rule does not apply when the agent is acting in a merely ministerial capacity.

6. **————: Statements of Agent: Res Gestae: Evidence.** Statements of an agent made at the time i nrelation to the business then being transacted and in regard to which he was authorized to act, form a part of the *res gestae*, if said or done while the transaction is passing and are admissible in evidence against the principal.

7. **RES GESTAE: Definition: Evidence.** The term, *res gestae*, may be properly defined as a collection of primary facts constituting the necessary and immediate field of a judicial inquiry, and within such field of immediate inquiry all the facts are competent evidence.

8. **EVIDENCE: Self Serving Statements: Principal and Agent.**
Communications between the principal and agent, or between
the general agent and sub-agent, that are of a self-serving
character, are not admissible in evidence on behalf of the
principal.

9. **ESTOPPEL: Intention to Deceive.** Conduct creating an estoppel may exist without an intention to deceive, if it is such
as to lead a reasonable man to act upon it.

10. ——————: **Burden of Proof.** Where an estoppel is affirmed and
relied upon by plaintiff as a ground of recovery, the burden of
proof is consequently on the plaintiff to satisfactorily prove
such constituent facts involved in the estoppel upon which its
right of action is based.

11. ——————: **Pleading: General Denial.** Where plaintiff's right of
action is based upon an estoppel, the defendant under a general denial may prove any facts that go to show that the
plaintiff's alleged estoppel never had an existence.

12. **INSTRUCTIONS: Conflicting: Ignoring Defense: Not Cured
by Other Instructions: Emjployer's Indemnity Insurance.** In
an action upon an employer's indemnity policy, an instruction
on behalf of the plaintiff in the case set out the facts which
were undisputed, and which would authorize a recovery on
the grounds of estoppel, if the defendant had not notified the
plaintiff upon what conditions it took charge of the defense
of the suit, in which an employee had recovered against plaintiff, but the instruction ignored the affirmative defense, which
was substantiated by evidence. *Held*, that the instruction was
erroneous and to give it was a reversible error and that this
error was not cured by an instruction given on behalf of dedefendant to the effect that if the defendant notified the plaintiff that it would not waive any exemptions, contained in the
policy, and took charge of the defense with that understanding,
the plaintiff could not recover.

13. ——————: ——————: **Grounds for Reversal.** Where instructions
are conflicting, the error is presumably prejudicial and the
giving of conflicting instructions is ground for reversal. Each
instruction need not cover all the issues if the series of instructions as a whole are correct and harmonious and are not
so framed as to be calculated to mislead. But when the cause
is submitted on conflicting instructions, the jury must necessarily decide between them, and may obey the wrong instruction instead of the right one.

14. **PLEADING: Reply: Waiver.** A waiver should be pleaded in
the petition and the practice of pleading a waiver in plaintiff's
reply has been condemned yet it has still been permitted by
the courts of this state.

Mining Co. v. Fidelity & Casualty Co.

**On Motion for Rehearing.**

15. **APPELLATE PRACTICE:** Insufficient Brief: Dismissal of Appeal. On the motion to affirm the judgment of the lower court because the appellant has not complied with Rule 18, the brief of the appellant is examined and *held* to be a substantial compliance with the rule, and *held* further that a violation of this rule contemplated only the dismissal of the appeal and not the affirmance of the judgment.

16. ———: 'Motion to Affirm Judgment: Notice to Opposite Party. Under the rules of the Springfield Court of Appeals, where the respondent desires to file a motion to affirm the judgment, he should give the adverse party five days' notice in writing of his intention to file such motion and accompany the notice with a copy of said motion.

Appeal from Jasper Circuit Court,—*Hon. Hugh Dabbs,* Judge.

REVERSED AND REMANDED.

*H. W. Currey* and *Percy Werner* for appellant.

(1) The elements of an estoppel *in pais* are wanting in the case at bar. The first essential is a full knowledge of all the facts and of the party's rights. Herman on Estoppel, 452; Taylor v. Zepp, 14 Mo. 489; Terrill v. Boulware, 24 Mo. 257; Burke v. Adams, 80 Mo. 514; Acton v. Dooley, 74 Mo. 69; Garesche v. Ins. Co., 146 Mo. 451; Burrill v. Ins. Co., 211 Mo. 158; Tennent v. Ins. Co., 133 Mo. App. 361. (2) The party against whom estoppel is invoked must have knowledge of all the material facts and not merely of a portion of them. Tennent v. Ins. Co., 133 Mo. App. 365. (3) So, too, a waiver cannot exist without knowledge. Waiver presupposes knowledge. Haysler v. Owen, 61 Mo. 270; Johnson County v. Lowe, 72 Mo. 637; Nevius v. Moore, 221 Mo. 356; Gallies v. Modern Woodmen, 98 Mo. App. 527; Advance Thresher Co. v. Pierce, 74 Mo. App. 684; Burgess v. Ins. Co., 114 Mo. App. 181; Benecke v. Ins. Co., 105 U. S. 359, 26 L. Ed. 992; Globe Ins. Co. v. Wolffe, 95 U. S. 333, 24 L. Ed. 390;

Pence v. Langdon, 99 U. S. 581, 25 L. Ed. 420; Ins. Co. v. Thomas, 82 Fed. 409; Hambleton v. Ins. Co., 6 Bissell, 95; Wilson v. Carpenter, 91 Va. 192; Murray v. Heinze, 17 Mont. 367; Findeisen v. Ins. Co., 57 Vt. 525. (4) In order to establish a waiver, or a right founded on estoppel, it must appear that the party pleading the waiver or estoppel has been led to do, or omit to do, something from which action or omission prejudice has resulted to him. Weir v. Lumber Co., 186 Mo. 396; Rosencranz v. Swofford Bros., 175 Mo. 537; Keet-Rountree D. G. Co. v. Ins. Co., 100 Mo. App. 514; Ins. Co. v. Wolff, 95 U. S. 326, 24 L. Ed. 390; 2 May on Insurance (4 Ed.), sec. 507. (5) Where there is evidence tending to prove that a letter was mailed, properly addressed and the postage prepaid, this is prima facie evidence of its receipt. Pier v. Heinrichshofen, 67 Mo. 169; State v. Gritzner, 134 Mo. 523; Ward v. Transfer Co., 119 Mo. App. 88; Herf v. Railroad, 100 Mo. App. 181; Bank v. Pezoldt, 95 Mo. App. 410; Rosenthal v. Walker, 111 U. S. 185. (6) Letters, declarations and acts, contemporaneous with the act in question, are admissible in evidence as showing the knowledge and information which the party had who performed the act, and to show the circumstances surrounding the act. 1 Greenleaf on Evidence (13 Ed.), secs. 101, 108; 11 Ency. of Evidence, 391; Erfort v. Consalus, 47 Mo. 213; Clark v. Loan Co., 46 Mo. App. 253; Folk v. Burnett, 37 Mo. App. 566; Friedman v. Holberg, 74 Mo. App. 33; Beaver v. Taylor, 1 Wall, 642, 17 L. Ed. 601.

*Haywood Scott* for respondent.

(1) The objection that a liability is not within the terms of a policy of insurance may be waived; and when the insurer undertakes the control of the defense of an action brought by the injured person against the insured, with full information of the character of

the action and without any reservation or notice to the insured that it did not intend to waive such objection, it will be deemed to have waived the objection, that the liability was not within the terms of the insurance policy. Canning Co. v. Guaranty & Accident Co., 133 S. W. 664; Mining Co. v. Fidelity & Casualty Co., 126 Mo. App. 104; Myton v. Fidelity & Casualty Co., 117 Mo. App. 442; Tozier v. Accident & Guaranty Corporation, 109 N. W. 410, 94 Minn. 478, 103 N. W. 509; Employers' Liability Assurance Corp. v. Coal Co., 141 Fed. 962; Cement Co. v. Travelers Insurance Co., 11 N. Y. App. Div. 411, 42 N. Y. S. 285; 11 Am. & Eng. Ency. Law, 13. (2) The insurance company, having elected to recognize the validity of the main clause in the contract of insurance, and assuming its liability thereunder as an indemnitor, it waived the provisions of such repugnant subsequent clause. K. C. M. & B. Co. v. Railroad, 151 Mo. 390; St. Joseph v. Railroad, 116 Mo. 636; Allen v. Hickey, 156 Mo. 59. (3) Under a policy of insurance it is not even necessary to plead waiver. McCulloch v. Ins. Co., 113 Mo. 606; Mickell v. Ins. Co., 144 Mo. 420; James v. Association, 148 Mo. 1; Murphy v. Ins. Co., 70 Mo. App. 84. (4) But the waiver may be pleaded in a reply. Ehrlich v. Ins. Co., 103 Mo. 231; Pierce Water Co. v. Pierce City, 61 Mo. App. 471; Moore v. Granby, 80 Mo. 86; Zoll v. Cornahan, 83 Mo. 35; Whiteside v. McGruder, 75 Mo. App. 364. (5) The court did not err in excluding such letters as it excluded, as there was no evidence that they had been deposited in the postoffice, or mailed, stamped and directed to the proper address. Phillips v. Scott, 43 Mo. 89; Dunlap v. U. S., 165 U. S. 486; Rosenthal v. Walker, 111 U. S. 185. (6) Self-serving declarations—communications between the principal and agents or between the general agent and the sub-agent are not admissible on behalf of the principal as they are self-serving declarations. Kellog Lumber Co. v. Mfg. Co., 140 Wis. 341,

122 N. W. 737; Forrester Co. v. Evatt, 90 Ark. 301, 119 S. W. 282; Erie Dispatch Co. v. Cecile, 112 Ill. 180, 10 Ency. Pl. & Pr. 21. (7) Any omission of defendant's affirmative defense in instructions for plaintiff is cured by instructions given for defendant. Schroeder v. Michel, 98 Mo. 48; Reames v. D. G. Co., 99 Mo. App. 403; Kingman & Co. v. Shawley, 61 Mo. App. 60; Ellinson v. Railroad, 60 Mo. App. 689; Lemser v. Mfg. Co., 70 Mo. App. 219; Schaaf v. Fries, 77 Mo. App. 356.

NIXON, P. J.—This suit was commenced in the circuit court of Jasper county by respondent against appellant upon an indemnity policy of insurance executed by the appellant to the respondent.

The plaintiff was operating a mine in Jasper county and procured of the defendant an employers' indemnity policy. By this policy, the defendant agreed to indemnify plaintiff against any loss from common-law liability for damages on account of bodily injuries or death accidentally suffered by any employee or employees of the plaintiff while on duty, to the extent of $1,500 in any one case. Among other things, it became the duty of the assured under the policy upon the happening of an accident to give immediate notice to the insurance company with the fullest information obtainable and full particulars of all claims made on account of said accident, and to co-operate with and render the insurance company all the assistance in its power; and, when a suit was commenced against the assured for damages on account of an accident covered by the policy it was required to immediately forward to the home office of the insurance company the summons or other process, and the insurance company agreed at its own cost to defend against such proceedings in the name and on behalf of the assured or to settle the claim unless it should elect to pay the indemnity provided for. It was further provided that the assured

should not settle any claim or interfere with any negotiations for any settlement without the consent of the insurance company, and the assured was further required, at the request of the insurance company, to aid in securing all the information and evidence necessary in effecting a settlement or procuring evidence.

On the 5th day of March, 1903, while the policy was in force, a laborer by the name of Marvin McDaniels, while employed in plaintiff's mine, was fatally injured and died. His employment was of the character covered by the policy. He was single and unmarried but left surviving him his mother, Nancy McDaniels. Within proper time his mother commenced suit against the plaintiff to recover the sum of $10,000 as damages for the alleged negligent killing of said Marvin McDaniels. Soon after the death of Marvin McDaniels a coroner's inquest was held and a copy of the evidence taken was forwarded to the insurance company. From that time on, the insurance company made more or less examination of the circumstances attending Marvin McDaniels' injuries and death, by inquiry and by the investigations of its special examiner. When suit was commenced by Nancy McDaniels, a copy of the summons was sent to the insurance company, and the plaintiff furnished the information and complied with the requirements of the policy of insurance on its part. At first, the insurance company seemed to be in some doubt as to whether the liability of plaintiff was a common-law liability, or a statutory liability by reason of a failure to observe what is known as the prop statute (now Sec. 8473, R. S. 1909). Furthermore, the defendant seems to have been undecided as to whether it should appear and defend the McDaniels action, but finally, upon being urged to do so by its local manager, it notified its attorney to take charge of the defense of the McDaniels suit upon the understanding that in so doing it did not waive any of the exemptions under its in-

demnity policy. At that time defendant wrote and sent a letter to its local manager notifying the plaintiff (Royle Mining Company) of the terms on which it took charge of the litigation. The attorney for the insurance company took charge of such litigation and later associated with him at the request of the plaintiff, Judge Howard Gray, as assistant attorney, and the two made a joint defense of the suit. The plaintiff, Nancy McDaniels, recovered a judgment for the sum of $1,000 and costs of suit. The judgment was predicated upon the plaintiff's liability by reason of its failure to observe the prop statute. From this judgment an appeal was taken to the Kansas City Court of Appeals where it was affirmed. Thereafter, execution was issued against the plaintiff, and defendant refusing to pay, plaintiff paid the judgment and costs in full, and now seeks to recover the amount so paid from the insurance company.

At the first trial of this cause, a demurrer to the plaintiff's evidence was sustained by the trial court from which the plaintiff appealed to the Kansas City Court of Appeals, and it was held by that court that the plaintiff had made a prima facie showing of the defendant's liability to it upon the indemnity policy on the ground of estoppel, and the judgment was reversed and the cause remanded for a new trial. Reference is made to the opinion in that case for further information. [Royal Mining Company v. The Fidelity and Casualty Company of New York, 126 Mo. App. 104, 103 S. W. 1098.]

Upon retrial, plaintiff obtained judgment for the sum of $1,461.14, from which the defendant has appealed. This appeal was originally sent to the Supreme Court on the ground of involving a constitutional question, but it was on order of that court remanded to this court for trial.

The plaintiff's cause of action in this case was founded upon the defendant's liability under its indemnity policy. The defendant set up in its answer that the plaintiff's liability to Nancy McDaniels, upon which the judgment was rendered in the McDaniels action against the plaintiff, was based upon the violation of the prop statute, and that the indemnity policy did not cover such liability. The plaintiff in its reply set up as a defense to the defendant's answer a plea in the nature of an equitable estoppel, to the effect that defendant, after having full knowledge of the character of the McDaniels action, by its conduct and acts in said cause, waived the objection that such liability, if any, was not within the terms of its policy of insurance and recognized said action as being covered by said policy of insurance, and elected to and did defend said action at its own costs, employed counsel, took charge of the defense, and defended the action to its final determination in the name and on behalf of the plaintiff herein under said policy of insurance. The defendant, *ore tenus,* set up as a defense to the estoppel that at the time it took charge of the defense of the McDaniels action it did so with the understanding that it would claim its exemptions under the indemnity policy and so notified the plaintiff. This is the seriously contested question of fact in the case on which the evidence was sharply conflicting and it was properly submitted to the jury.

Some constitutional questions were raised, on retrial, after the case was remanded by the Kansas City Court of Appeals. The substance of these allegations is, "That to hold the defendant liable in this suit is a violation of Sec. 15 of Art. 2 of the Constitution of Missouri, and of Sec. 10 of Art. 1 of the Constitution of the United States providing that no state shall pass any law impairing the obligation of any contract, and also contrary to the fourteenth amendment to the Constitution of the United States." It is

held that such allegations do not raise a constitutional question or give the Supreme Court jurisdiction of the appeal. [Hilgert v. Barber Asphalt Paving Co., 173 Mo. 319, 72 S. W. 1070.] "The subject-matter, that is, the question to be decided, and not the result of the decision, gives the jurisdiction." [State ex rel. Dugan v. The Kansas City Court of Appeals, 105 Mo. 1. c. 302, 16 S. W. 853.]

Many of the questions now urged upon our attention and which we are asked to consider are those formerly passed upon by the Kansas City Court of Appeals. Among the questions so involved is, whether the conduct and action of the defendant in taking charge of the defense in the McDaniels litigation constituted a waiver, an estoppel, or an election. This question was decided on the demurrer on the former appeal adversely to the defendant, and it was held that the objection that a liability is not within the terms of the indemnity policy may be waived; and that when the insurer undertakes the control of the defense of an action brought by the injured person against the insured, with full information of the character of the action, and without any reservation or notice to the insured that it did not intend to waive such objection, it will be deemed to have waived the objection that the liability was not within the terms of the insurance policy. This principle is well supported by the following authorities.: Fairbanks Canning Co. v. London Guaranty & Accident Co., 154 Mo. App. 327, 133 S. W. 664; Royle Mining Co. v. The Fidelity and Casualty Co., supra; Myton v. Fidelity and Casualty Co., 117 Mo. App. 442, 92 S. W. 1149; Tozer v. Ocean Accident & Guaranty Corp. (Minn.), 109 N. W. 410; Tozer v. Ocean Accident & Guaranty Corp. (Minn.), 103 N. W. 509; Employers' Liability Assurance Corp. v. Chicago & Big Muddy Coal & Coke Co., 141 Fed. 962; Glen Falls Portland Cement Co. v. Travellers' Ins. Co., 11 N. Y. App. Div. 411, 42 N. Y.

Supp. 285; Globe Navigation Co. v. Maryland Casualty Co. (Wash.), 81 Pac. 826.]

The appellant claims that the respondent's plea of estoppel rests upon the fact of prejudice resulting to respondent from the act of appellant by reason of its having assumed the defense of the McDaniels action, and that in fact the respondent was not injured or prejudiced in any way by reason thereof, and therefore there was no estoppel. To support this contention, the appellant points to the evidence that respondent employed its own attorney to assist the appellant's attorney and that they jointly defended the suit.

The facts in regard to the employment by the plaintiff of an attorney are that the insurance company, after an examination of the facts attending the accident, ordered its attorney, Frank L. Forlow, to take charge of the defense of the McDaniels suit, but afterwards, as the amount claimed by Nancy McDaniels was $10,000, and the limit of defendant's liability under its indemnity policy was $1,500, in order to protect itself against the excess, the plaintiff desired to have its own attorney to assist in the defense, and applied to Mr. Forlow to have Judge Howard Gray associated with him. This request Mr. Forlow at first refused, saying as far as he was concerned he did not need any assistance. Afterwards, however, some of the stockholders made a second application to Mr. Forlow and he consented to the employment and assistance by their attorney. But it appeared that Mr. Forlow had charge of the defense and that Judge Gray was acting as assistant or associate, and both co-operated and did what they could to make the defense effectual.

The Kansas City Court of Appeals affirmed the estoppel as follows: "The principle on which defendant should be held liable is that which estops a party from taking a position inconsistent with one previously assumed by him, and to the prejudice of

a third person. [Tozer v. Insurance Co., 94 Minn. 478.] Defendant will not be permitted to serve one purpose by taking a position, as it did throughout the progress of the McDaniels suit, that the liability of plaintiff was one it would recognize as covered by the policy, and then after using that position to the detriment of plaintiff, change front by denying all liability. *Plaintiff must be presumed to have been prejudiced by such conduct and need not be put to the proof that it could have achieved better results had defendant not interfered.*" (The italics are ours.)

The presumption of prejudice herein referred to as to the assured being injured by the defense of the McDaniels litigation is not a rebuttable presumption of fact. "The meaning is that as a maxim of jurisprudence one who has done an act cannot allege in defense that he did not also intend that its usual consequences should follow." [16 Cyc. 1081.]

Appellant complains that certain letters which it offered in evidence were by the court excluded. Many of these letters were sent by the insurance company from its general offices in St. Louis to one Samuel C. Boggess who at that time was the resident manager of the insurance company at Carthage, Missouri, and solicitor of insurance in its behalf. As to these letters, Boggess testified that all letters he received addressed to the Royle Mining Company which he was asked to deliver to that company he did deliver to the general manager, Mr. Mosely; that not all were delivered by him to Mosely in person, but he thought most of them were delivered by mail; that those which were delivered by mail were deposited in the postoffice, postage prepaid, addressed to Carterville, Missouri. All the letters that Boggess testified he delivered, either in person or by mail, were admitted in evidence by the court; and there was no evidence that the letters which were excluded had been deposited in the postoffice, stamped and addressed to

the plaintiff, or personally delivered to it, and such letters were properly excluded. [Phillips v. Scott, 43 Mo. l. c. 89; Dunlap v. U. S., 165 U. S. 486; Rosenthal v. Walker, 111 U. S. 185.]

As to the letters received by Boggess but not delivered to the plaintiff, the appellant claims that Boggess was the agent of the insurance company to receive from it and deliver to the plaintiff company the letters in question; that he was at the time the agent of the plaintiff company to receive and open its letters; and that his receipt of the letters therefore would constitute a receipt of them by the plaintiff. The letters now under consideration, as the evidence of the appellant shows, were directed to the plaintiff company at its office in Carthage, but the evidence of the plaintiff shows that its office was really not at Carthage but at Duenweg. It appeared from the evidence that the directors of the plaintiff company occasionally held their meetings, at Carthage at different places in the city as was most convenient, and, among other places, in the office of Boggess. The evidence as to the connection of Boggess with plaintiff company was that he frequently opened the letters directed to the plaintiff with the plaintiff's consent and delivered them to plaintiff's agents, and in that respect he seems to have been acting in a mere ministerial capacity.

The general rule is that notice to an agent is notice to his principal, but the rule does not apply where the agent is acting in a merely ministerial capacity. When so acting, the agent does not act as a substitute for the principal, nor is there imposed upon the agent the duty of communicating to his principal the knowledge thus acquired. This is illustrated by the case of an agent of an insurance company whose chief business is insurance and who carries on the insurance business at an office of his own, but also keeps books for a half-dozen mining corporations as

a side-issue, such books being kept by him at his office; it was held in such a case that such facts would not constitute such a relation between the insurance agent and such mining companies as to bind them with notice or knowledge of self-serving declarations made by the insurance company to its agent. [Fairfield Savings Bank v. Chase, 72 Me. 226; Rogers v. Dutton, 182 Mass. 187; 31 Cyc. 1591.]

But it is further contended by the appellant that the correspondence as a whole between the insurance company and its resident manager at Carthage was admissible as a part of the *res gestae;* that as the letters, declarations and acts were contemporaneous with the act in question, they are admissible in evidence as showing the knowledge or information which the party had who performed the act and as showing the circumstances under which appellant undertook the defense of the McDaniels litigation; that appellant's officers had every reason to believe that those letters had been delivered and that they had a right to act on that supposition and did so act.

The term *res gestae* in the law of evidence has a greatly extended application. It may be properly defined as a collection of primary facts constituting the necessary and immediate field of a judicial inquiry, and within such field of immediate inquiry all the facts are competent evidence. [16 Cyc. 1148.] Statements of an agent made at the time in relation to the business then being transacted and in regard to which he was authorized to act form a part of the *res gestae* if said or done while the transaction is passing and are admissible evidence against the principal. [Beardslee v. Steinmesch, 38 Mo. 168; Singleton v. Mann, 3 Mo. 464; Devlin v. Railway Co., 87 Mo. 545.] The rule of law however seems to be well established that self-serving declarations—communications between the principal and agent or between the general agent and sub-agent—are not admissible on

behalf of the principal. [Kellog Lumber & Mfg. Co. v. Webster Mfg. Co. (Wis.), 122 N. W. 737; Forrester-Duncan Land Co. v. Evatt (Ark.), 119 S. W. 282; Erie Dispatch Co. v. Cecil, 112 Ill. 180.]

The principal matter under investigation at the trial was whether the defendant took charge of the McDaniels litigation under the terms of its indemnity policy alone or whether it took charge of such litigation with notice to the plaintiff that it reserved all its rights and exemptions from liability under the terms of such indemnity policy.

Anything said or done by either of the parties with the knowledge of the other as to the defendant's action in taking charge of the defense of the McDaniels action was a part of the *res gestae;* but the uncommunicated purposes and intentions of the defendant in regard to the defense of such litigation were irrelevant and consequently incompetent for any purpose and were properly excluded, the question primarily being, what effect the conduct of defendant, unexplained, was calculated to and did produce on the plaintiff. The circumstances under which the defendant took charge of the defense of said suit were such as to demand on its part that it should notify the plaintiff of the reservation of its rights. Conduct creating an estoppel may exist without an intention to deceive if it is such as to lead a reasonable man to act upon it. [Globe Navigation Co. v. Maryland Casualty Co. (Wash.), 81 Pac. 826.] It became the defendant's duty to speak and explain to the plaintiff its action, and its silence would constitute an estoppel, and the position assumed in that litigation would bind it in this, whatever might be its uncommunicated intention. Having assumed that under the terms of its indemnity policy it was its duty to defend the McDaniels suit, after having been cast in that suit it cannot now change front and say that it was not its duty to defend said suit or that it supposed that plaintiff

knew that it reserved its exemption rights. As said by SHERWOOD, J., in Bensieck v. Cook, 110 Mo. 1. c. 182, 19 S. W. 642: "Parties litigant are not allowed to assume inconsistent positions in court; to play fast and loose; to blow hot and cold. Having elected to adopt a certain course of action, they will be confined to that course which they adopt."

The question of burden of proof does not seem to have been raised by either party at any time in the course of the trial either *nisi* or in this court; but as that question is likely to be evolved in the course of another trial, and, for the further reason that it tends to throw some light on the question as to the propriety of the instructions given, it should receive consideration at our hands.

The estoppel is affirmed and relied upon by the plaintiff as a ground of recovery, and the burden of proof is consequently on it to satisfactorily prove each constituent fact involved in the estoppel upon which its right of action is based. [City of St. Louis v. Arnot, 94 Mo. 275, 7 S. W. 15.] As there were no pleadings beyond the reply, the burden of proof must be determined by the nature of the evidence and its relation to the case. Under the defendant's general denial, it was competent for the defendant to prove any fact that went to show that the plaintiff's alleged estoppel never had an existence. [Jones v. Rush, 156 Mo. 364, 57 S. W. 118; Jacobs v. Moseley, 91 Mo. 457, 4 S. W. 135; Feeney v. Chapman, 89 Mo. App. 371; Bolton v. Railway Co., 172 Mo. 92, 72 S. W. 530; Scudder v. Atwood, 55 Mo. App. 512.] If the plaintiff understood that the defendant reserved its rights under its indemnity policy at the time it assumed charge of the defense of the McDaniels action, then there never existed any estoppel against the defendant; but on the contrary, if it took charge of the defense without giving plaintiff any explanation of its act, then its silence was an estoppel. Under the facts of the case,

when the plaintiff had shown at the trial that the defendant made the defense of the McDaniels suit as it was required to do under its policy, it made a prima facie case by raising a presumption in its favor. The burden of evidence was thereby shifted and cast upon the defendant. [Link v. Jackson (not yet officially reported), 139 S. W. 588.] When the defendant in its turn introduced evidence tending to prove that it took control of said action with notice to the plaintiff of the reservation of its exempted rights, the burden of evidence then shifted to the plaintiff to show by a preponderance of the evidence that it had no understanding when the defendant took charge of the defense that defendant was claiming its exemption rights under the policy.

Complaint is made of instructions numbered 2 and 3 given for the plaintiff in this case, which instructions are as follows:

"2. The court instructs the jury that if they believe from the preponderance or greater weight of the evidence that, after said suit of Nancy McDaniels was brought against the plaintiff, that plaintiff notified the defendant of said suit, and that the defendant employed Frank L. Forlow as its attorney in said matter, and became informed of the character and nature of the allegations of plaintiff's petition in said suit, and afterwards that the defendant herein, through its said attorney, Frank L. Forlow, took charge of the defense in said suit, and proceeded and defended the same, in the name and on behalf of the plaintiff, to a final determination of said suit in the circuit court of Jasper county, which suit finally resulted in a judgment in favor of the plaintiff therein, Nancy McDaniels, and against the plaintiff, the Royle Mining Company, for the sum of one thousand dollars and the costs of suit, and that the defendant, in the name and on behalf of the plaintiff, through its attorney, Frank L. Forlow, prosecuted an appeal from said judgment

of the circuit court of Jasper county to the Kansas City Court of Appeals, and that the said Kansas City Court of Appeals affirmed the said judgment of the circuit court of Jasper county, and that the defendant did not settle said suit or judgment, and did not pay to the plaintiff the indemnity provided for in said policy of insurance, and that the costs of said suit were by the clerk of the circuit court taxed at $259.70, and that an execution was issued from the circuit court of Jasper county on said judgment, and that thereupon the plaintiff, on the 29th day of March, 1905, paid the amount of said judgment together with said costs, interest and sheriff's commission, amounting to the sum of $1,259.70, and that the defendant has failed and refused to pay said sum of $1,259.70 to plaintiff, then the jury will find for the plaintiff in the sum of $1,259.70, with interest thereon at the rate of six per cent per annum from the 29th day of March, 1905, to the present date.

"3. The court instructs the jury that although they may find and believe from the evidence that the defendant failed to determine whether the cause of action brought by Nancy McDaniels against the Royle Mining Company was based upon a common-law liability or a statutory liability until the amended petition was filed in said cause, to-wit, on April 23, 1903; and if you further find and believe from the evidence that, after said amended petition was filed, the defendant took control and continued the defense of said cause without notifying plaintiff in this cause that it would not be liable under its policy to plaintiff; and that, after judgment was rendered against plaintiff, it prosecuted an appeal of said cause to the Kansas City Court of Appeals, and that the defendant paid all the costs therefor and also paid its attorney, Frank L. Forlow, for services rendered in said cause from the time of the institution of said suit to its final determination in the Kansas City Court of Appeals, it

thereby waived its rights to deny liability under said policy; and if you find and so believe the facts to be from the evidence you should find the issues for the plaintiff, and assess its damages in the sum of $1,259.70, with interest at the rate of six per cent per annum from the 29th day of March, 1905.''

The court also gave for the defendant, among others, instructions numbered 3 and 6, which are as follows: ·

''3. The court instructs the jury that if you believe from the evidence that defendant, before entering upon or participating in the defense of the McDaniels case against the plaintiff herein, notified the plaintiff of its intention to claim its exemption from liability under its policy, based upon the clause providing that it should not be liable for any injuries sustained by reason of the failure of the plaintiff herein to obey any of the statutes of this state affecting the safety of persons, and that it would enter upon or participate in the defense of the McDaniels case, expressly reserving with plaintiff its right under its contract to disclaim any liability for any judgment obtained in the McDaniels case, based upon the violation of such a statute, and the plaintiff did not object thereto, then you are instructed that the act of the defendant in entering upon or participating in the defense of the McDaniels case, did not constitute a waiver of its said policy condition of exemption from liability in such case, and your verdict should be for the defendant.

''6. The court instructs the jury that if you find from the evidence that the defendant insurance company, by its attorney, Frank L. Forlow, assisted by the attorney for the plaintiff, Howard Gray, defended the said case of Nancy McDaniels against the Royle Mining Company, and that, at the time of said defense, the said Royle Mining Company had notice or knowledge that the defendant company was defend-

ing the said case, reserving the right to disclaim liability in case it should be determined that the injury to the son of Nancy McDaniels resulted from a violation of a statute of the state of Missouri affecting the safety of persons, then your finding should be for the defendant and against the plaintiff.''

Instruction No. 2 for plaintiff is based entirely upon facts that are substantially admitted in this case by the defendant. It was uncontradicted that the suit of Nancy McDaniels was brought against the plaintiff herein and that the plaintiff notified the defendant of said suit, and that defendant employed Frank L. Forlow as its attorney in said suit; that it became informed of the character and nature of the plaintiff's petition therein prior to the time it took any part in the defense of the McDaniels litigation, and that after obtaining such information its attorney, Frank L. Forlow, took charge of the defense in behalf of plaintiff herein to a final termination of the suit; that the result of the said suit was a judgment in favor of the plaintiff therein, Nancy McDaniels, and against the plaintiff therein, the Royle Mining Company, for the sum of $1,000 and costs of suit; that the defendant herein through its attorney prosecuted an appeal to the Kansas City Court of Appeals in which the judgment of the circuit court of Jasper county was affirmed; that the defendant did not pay said judgment; that the costs were taxed at $259.70; that an execution was duly issued on said judgment and that plaintiff herein paid the said judgment together with the costs, amounting to $1,259.70; that the defendant has failed to pay the plaintiff the said sum with interest thereon or any part thereof.

At the trial, the defendant had introduced its letter dated March 30, 1903, directed to the Royle Mining Company, in which it said: ''. . . we can only appear and defend this case with the express understanding that by so doing we do not waive any

provision of our policy. If it should develop that recovery, if any, is based upon the violation of a statute, our company would not be responsible to you for any judgment, or cost or expense which might be incurred in the case. With this express understanding, we are today writing our attorney to appear and defend. After he has completed his investigation, we will instruct him to call upon you and discuss the facts in the case.''

So that under the condition of the evidence, this instruction, in effect, was a directed verdict, and required the jury to find for the plaintiff irrespective of any notice to the plaintiff by the defendant of the terms on which it claimed to have taken charge of the litigation. And the plaintiff by its attorney during the argument sought to impress by his argument upon the jury this construction of the law. He made the following statements to the jury:

''Now, they had to do one of two things; they had to tell the insured, the mining company, through their agent, Mr. Boggess, or some other way, 'This clause B is in our policy and that lets us out, and therefore we don't have to defend that case.' I submit to you they could have done that then. They could have talked to the agent and said, 'It is to our interest to go ahead and say nothing about that clause B, it is the best policy to go ahead and waive that clause B, and if we do that, of course we defend the case.' Now, gentlemen, they did defend the case and I say if they defended the case, they could only defend it by waiving clause B as being covered by the policy.'' Mr. Werner: ''We object to that statement.'' The Court: ''Let the record show you make the objection and I overrule it.'' Mr. Werner: ''We except.'' Mr. Scott, later on in his argument: ''Now that was a nice sort of a proposition; that was a beautiful sort of argument to put up to a man by an insurance company, who bought the insurance policy thinking it in-

sured him, for the insurance company to walk down and say, 'Yes, you bought our policy and you paid for it, and all that, but it doesn't insure you.' '' Mr. Currey: ''I object for the reason the instructions of the court tell the jury they are not liable and argument made for prejudicing the jury.'' The Court: ''The objection is overruled.'' Mr. Currey: ''We except.''

The construction of the law as declared by plaintiff's instruction No. 2 was thus strongly enforced by plaintiff's counsel upon the jury and his interpretation of the instruction was emphasized by the rulings of the court to such argument by denying the objections of the defendant.

Plaintiff's instruction No. 3 proceeds upon the theory that the defendant failed to determine whether the cause of action in the suit brought by Nancy McDaniels against the plaintiff herein was based upon a common law liability or a statutory liability until the amended petition was filed on April 23, 1903, and proceeds to instruct the jury that if they find and believe from the evidence that after said amended petition was filed the defendant took control and continued the defense of said cause without notifying the plaintiff that it would not be liable under its policy, then they should find a verdict for the plaintiff.

The two instructions, considered together, proceed upon an alternative hypothesis. Instruction No. 2 was predicated on the finding by the jury that after the McDaniels case was commenced, if the defendant became informed of the character and nature of the allegations of the petition in said suit and thereafter took charge of the defense, then a recovery was authorized whether the defendant gave notice of the reservation of its rights under its indemnity policy or not. Under instruction No. 3 for the plaintiff, recovery is predicated on the finding by the jury that if after the amended petition was filed the defendant

took charge of and continued the defense of said cause without notifying plaintiff herein that it would not be liable on its policy to plaintiff, then a recovery was allowed to the plaintiff.

On the part of the defendant the court by numerous instructions declared the law to be that if at or prior to taking charge of the defense in the McDaniels case, the defendant notified the plaintiff that it would not waive any exemptions contained in its indemnity policy and took charge of the defense with that understanding, the plaintiff could not recover.

It is apparent that these instructions are in conflict. In such case, error is presumably prejudicial. [Ross v. Metropolitan St. Ry. Co., 132 Mo. App. 472, 112 S. W. 9; Mansur-Tebbetts Imp. Co. v. Ritchie, 143 Mo. l. c. 612, 613, 45 S. W. 634.] The law is thoroughly imbedded in the adjudications of this state that the giving of conflicting instructions is ground of reversal. [Sheperd v. St. Louis T. Co., 189 Mo. 362, 87 S. W. 1007; Morton v. Heidorn, 135 Mo. l. c. 617, 618, 37 S. W. 504.] In the case last cited, the Supreme Court said: "We do not feel at liberty to declare harmless the error which we have above indicated. Where an error in an instruction to a jury occurs at a trial, and it is followed by a result prejudicial to the excepting party (as, for instance in this case, by an adverse verdict) a reviewing court cannot properly consider the error otherwise than as a cause contributing to that result, unless the exact bearing it has had thereon can be discerned, and is found to have been harmless to the rights of the complaining party. This is all that is meant by the declaration that has occasionally been made to the effect that 'error is presumptively prejudicial.' [State v. Taylor, 118 Mo. 161, 24 S. W. 451; Boston, etc. Railroad Co. v. O'Reilly, 158 U. S. 334, 15 Sup. Ct. Rep. 830.] The Missouri statute (section 2303) does not weaken the force of that declaration, for such an error as has

been described should be, and is, regarded by this court as one 'materially affecting the merits of the action,' as mentioned in that section.''

Each instruction need not cover all the issues if the series of instructions as a whole are correct and are not so framed as to be calculated to mislead, and are harmonious; but when the cause is submitted on conflicting instructions, the jury must necessarily decide between them and may obey the wrong instruction instead of the right one. [Baker v. Railway Co., 122 Mo. 1. c. 551, 26 S. W. 20; Spillane v. Railway Co., 111 Mo. 1. c. 565, 20 S. W. 293.] As stated in Baker v. Railway Co., ''The rule of law is well settled that to give conflicting and inconsistent instructions is reversible error. The rule has been often recognized and quite as frequently applied. . . . An instruction erroneous, if taken by itself, is often helped out by others upon the same subject, but even in such cases they must not be contradictory.''

The respondent, to break the force of this law as to conflicting instructions, makes the following claim: That while the second instruction does omit the affirmative defense made by the defendant, yet this defect, if any, is cured by the instructions given for the defendant, and that the instructions, considered as one charge, fully present both sides of the case to the jury. Respondent in support of this contention cites the case of Schroeder v. Michel, 98 Mo. 1. c. 48, 11 S. W. 314, which was an action for breach of promise of marriage in which the Statute of Limitations was interposed as a defense by the defendant. The first instruction given in said cause for the plaintiff omitted from consideration the defense of the Statute of Limitations, but an instruction was given for the defendant in which the law as to such defense was properly stated. It was contended that it was error for the court to give the first instruction author-

izing plaintiff's recovery without mentioning the defense of the Statute of Limitations. The court said: "In the present instance, the instruction number one for plaintiff says nothing of the Statute of Limitations, but the bearing of instruction number six for defendant as a qualification of it is *very plain*: 'Even if the jury believe, from the evidence, that defendant promised to marry plaintiff, yet, if you further believe that at a period of time,' etc. This language could leave no doubt that if the facts named in number six were found, the plaintiff could not recover even if the facts named in number one were also believed to exist." It is very evident that this authority can have no application to the facts of the present case. The conflicting instructions in the present case relate to the crucial questions of fact which the jury was called upon to decide. The evidence as to the question of notice as between the evidence of the plaintiff and that of the defendant hung trembling in the balance, and was a vital question and one on which there was room for the jury to entertain a difference of opinion. In such case it was the duty of the trial court to give the instructions stating the facts necessary to a recovery in plain and unequivocal language so that the jury might readily understand the law of the case.

In the instructions for the plaintiff some question is made as to the nature of the notice that defendant had of the McDaniels litigation at the time it took charge of the defense of that case. We think that under the evidence the defendant at least had constructive notice that the claim of Nancy McDaniels in the original suit against plaintiff was upon a statutory cause of action and that defendant was not liable under the terms of its indemnity policy to her in such action. Also, that it was fully advised of its rights prior to entering into the litigation and that it intended to take charge of the litigation only upon

condition that all its rights under its indemnity policy should be reserved. This is abundantly shown by the letters written by it to its resident manager, Boggess, prior to any appearance by it in the original suit, and it sent a letter to that effect to be delivered to the plaintiff,—sent it to its agent, Boggess, directing him to deliver it. But the question whether the letter was delivered or the plaintiff had notice was the vitally contested question of fact in the case.

Further objection has been made by the defendant that the waiver was improperly pleaded in plaintiff's reply. While such practice has been condemned, it has still been permitted by the courts of this state. [Ehrlich v. The Aetna Life Ins. Co., 103 Mo. 231, 15 S. W. 530; Moore v. The Granby Mining & Smelting Co., 80 Mo. 86; Whiteside v. Magruder, 75 Mo. App. 364.] As this case is to be retried, the plaintiff should so amend its petition as to state its cause of action therein rather than in the reply.

Counsel for appellant in this case with rare learning and unexampled patience have presented the rights of their client in a portentous and monumental brief of 149 closely printed pages. It is not necessary to a proper determination of this case to follow their reasoning throughout and the numerous citations of authorities. All the questions raised in the appellant's brief have been carefully examined and are overruled, except as herein stated.

From what has been said it follows that the judgment must be reversed and the cause remanded, and it is so ordered. *Cox, J.,* concurs. *Gray, J.,* having been of counsel, not sitting.

## ON MOTION FOR REHEARING.

NIXON, P. J.—At the oral argument of this cause on the merits, respondent's attorney made the oral contention before taking up his argument of the

merits that appellant's brief was not drawn in compliance with our Rule No. 18. [156 Mo. App. 16, 122 S. W. 7.] The two paragraphs of that rule which are material in this connection are as follows:

"All briefs shall be printed in not less than ten point (long primer) type, and shall contain separate and apart from the argument or *discussion* of authorities, a statement, in numerical order, of the points relied on, together with a citation of authorities appropriate under each point. Any brief failing to comply with this rule may be *disregarded* by the court."

"The brief filed by appellant shall distinctly and separately allege the errors committed by the trial court, and *no reference will be permitted at the argument to the errors not thus specified, unless for good cause shown this court shall otherwise direct.*"

It will be noticed that each of these paragraphs carries a penalty. There are two other paragraphs in the same rule, neither of which carry a penalty.

Rule 21 (156 Mo. App. 16, 122 S. W. 7), is as follows: "Penalty for failure to comply with rules 12, 14, 15, 16 and 18.—If any appellant in any civil cause shall fail to comply with the provisions of Rules 12, 14, 15, 16 or 18, the court, when the cause is called for hearing, will dismiss the appeal, or writ of error, or, at the option of the respondent, continue the cause at the cost of the party in default. No oral argument will be heard from any counsel failing to comply with the provisions of Rule 18, unless said counsel is prevented from doing so by failure of opposing counsel."

The oral arguments were heard it appearing to the court upon a hurried examination of appellant's brief that it was in substantial compliance with the rule, but as we remember, it was understood that we would consider the matter later as to whether the appellant's brief should receive consideration. After the oral argument, respondent's attorney filed "written objections to appellant's brief," reciting that such

objections had been orally made and that the respondent's attorney had obtained leave of the court at said time to put his objections in writing and file the same with the clerk, and asking, for the reason specified, *that the judgment be affirmed.* The written objections filed by respondent's attorney do not ask the court to *disregard* the appellant's brief, as contemplated by the first of the two paragraphs quoted from Rule 18, and do not ask for a *dismissal of the appeal,* as contemplated by Rule 21. In that paper the respondent's attorney merely "objects to this court considering any of the alleged errors of the trial court for the reason that appellant's statement, brief and argument contains no assignment of errors, as required by Rule 18," stating that appellant had shown no cause whatever for the omission. He evidently had the second of the two paragraphs (quoted above) in mind. That paragraph provides that "no reference will be permitted *at the argument* of errors not thus specified." Respondent's attorney did not ask to have the appeal dismissed as contemplated by Rule 21, but asked the court in his written objections to *affirm the judgment.* Neither Rule 18 nor Rule 21 permits such a course. If respondent's attorney desired to file a motion to affirm the judgment, he should have given the adverse party five days' notice in writing of his intention to file such motion and accompanied the notice with a copy of said motion. [Rule 25, 156 Mo. App. 17, 122 S. W. 8.]

The appellant's attorney was permitted to argue this case because it appeared, prima facie, that his brief was very carefully drawn and the arrangement and discussion so planned as to cause the respondent's attorney and the court the least possible trouble in turning to any given phase of the case. This court has established for itself the practice of hearing the arguments on motions to dismiss and motions to affirm along with the arguments on the merits, where

briefs on the merits have been filed, and taking the whole matter under advisement at the same time. So, in this case, it not appearing that appellant had been guilty of a palpable violation of Rule 18, the court permitted the learned attorney for the appellant to make his argument, and took the question of the defectiveness of the brief under advisement along with the merits, with the idea if respondent's attorney were right in his contention and we should so find upon a more careful examination of the brief, the appeal would be dismissed as contemplated by Rule 21. We did examine the appellant's brief with that end in view and found that the brief was prepared in substantial compliance with our rules. We found in appellant's brief first a very complete statement of the substance of the pleadings, the issues finally evolved, the provisions of the indemnity policy, the evidence material for our consideration; and the history of the litigation,—each step preceded by a topical heading for the convenience of the respondent and the court. On page 36 we find the following statement: "Appellant urges as grounds for reversal, and presents to this court, the following: Points and Authorities." Under this is, "I. The Constitutional Question." Then, in black-face type, appear in numerical order the points relied on for reversal under that general heading, with authorities beneath. And so of the other points relied on for reversal. We have no rule which requires an "assignment of errors" in the sense used in appellant's objections. Rule 18 simply requires that briefs contain separate and apart from the argument and *discussion* of authorities, a statement, in numerical order, of the points relied on, together with a citation of authorities under each point. In appellant's brief, the argument and *discussion* of authorities begins on page 55 under the heading in large type: "Appellant's Argument." The conclusion of the brief is as follows: "We respectfully con-

tend that, because of the errors pointed out above, the judgment in plaintiff's favor should be reversed."

The primary object of the rule requiring appellant's attorney to present order and not chaos in his brief is to assist the respondent in making an intelligent reply and to assist the court in ferreting out the questions to be decided. It is intended *more* as a protection to the court than to the respondent's attorney because he is presumed to be well acquainted with the various phases of the case, while the court knows absolutely nothing about it on first presentation and must find out everything about it in order to intelligently pass upon the errors complained of. If the appellant's attorney was permitted in his brief to commingle points relied on for reversal, and statement of facts, and argument, and citation and discussion of authorities, at will, the appellate court in making its way through the tangled mass would be put to no end of trouble. No such condition exists in this case. The brief is skilfully prepared and carefully arranged with the obvious end in view of assisting the court in its investigation of the merits of the appeal.

As stated in the opinion heretofore filed in this case, this appeal was originally take to the Supreme Court on the theory that constitutional questions were involved. The printed abstract and the briefs of both parties are entitled, "In the Supreme Court of Missouri," and bear the file mark of the clerk of the Supreme Court. Later, the Supreme Court certified the case to this court. These facts appearing, it may well be said that the attitude of the Supreme Court on such a question as we now have under consideration should have some weight in determining the sufficiency of the briefs. [Supreme Court Rule 15 (228 Mo. 3, 73 S. W. 6), contains the same provisions that we have quoted from our Rule 18. In the late case of Wallace v. Libby, 231 Mo. 341, 132 S. W. 665, respondent in a motion to dismiss the appeal or affirm the judgment

set out as a fourth ground, the following: "Because appellant's brief herein is not printed separate and apart from the argument or discussion of the authorities, and does not contain a statement, in numerical order, of the points relied on, together with a citation of authorities under each point, as required by Rule 15. Further, because appellant's brief does not distinctly and separately allege the errors committed by the trial court as required by Rule 15." In passing on this ground, the Supreme Court said: "The fourth ground of the motion is not well taken. Much latitude must, in the very nature of things, be permitted under Rule 15 of this court. Each brief and argument must depend largely upon the individuality of the person who prepared or makes them, and no fixed standard can be erected by which each and all briefs and arguments are to be measured or tested. Just so there is a substantial compliance with Rule 15, no objection can successfully be made to the form of the brief or the order of the argument." This is the enlightened policy of the courts today. While the rules of appellate courts which are designed to establish uniformity to a reasonable extent and to carry out that end should be faithfully observed, the refinement contended for by appellant's counsel is *ultra* technical. It is protection, not oppression, that appellate courts seek to attain by salutary rules of practice. From what has been said, the reason we did not advert to this matter in the opinion heretofore filed is apparent, and we do so now only because of the insistency of appellant's counsel. The motion for rehearing is denied. *Cox, J.,* concurs. *Gray, J.,* not sitting.