MOORE v. THE GRANBY MINING AND SMELTING COMPANY, *Appellant.*

1. **Principal and Agent**: LIABILITY ON CONTRACT OF AGENT: SEALED INSTRUMENT. Plaintiff sold one Y. a tract of land, the title to which was in doubt. By an instrument under seal, to which defendant was no party and in which he was not named, plaintiff agreed to use diligence in perfecting the title and to have it vested in Y., and thereupon Y. was to pay one-half of the purchase money, the other half being paid in cash. In making the purchase Y. was acting as agent of defendant, and he immediately assigned the contract to defendant, who took possession. Defendant had furnished the money for the cash payment. Plaintiff subsequently aided in perfecting the title, and the same was finally vested in defendant. *Held*, that though plaintiff could not maintain an action against defendant on the contract, because it was under seal and defendant was no party to it and was not named in it, yet he could sue on the implied obligation growing out of all the facts stated.

2. **Statute of Limitations**: PLEADING. When the plaintiff relies on matter in avoidance of a plea of the statute of limitations, he must plead it specially. It will not be received in evidence under a general denial.

3. ———— : AVOIDANCE OF. To avoid the statute of limitations it is not sufficient to show that the plaintiff was ignorant of his rights until a time within the statutory period. It must appear that his ignorance was caused by some improper act or concealment practiced by the defendant.

*Appeal from Jasper Circuit Court.*—HON. JOSEPH CRAVENS, Judge.

REVERSED.

*Harding & Buler* for appellant.

*Reynolds & Hilliburton* for respondent

EWING, C.—This suit was commenced January 13th, 1880, by filing a petition in substance: That in 1870 the plaintiff was in possession of forty acres of land in Cherokee county, Kansas; that defendant, by one J. Morris Young, who was defendant's agent and superintendent at Oronogo,

Missouri, applied to plaintiff to purchase his interest in the land, and thereupon plaintiff sold his interest to said Young for $350, of which amount $175 was paid, and the other $175 was to be paid whenever said Young or his assigns should obtain the full title to the land; that the title was in dispute, and consequently it was agreed between said Young and plaintiff that the trade was to be kept secret, and he was to assist said Young in perfecting the title; that the title was finally settled to be in one Joy, and on the 29th day of August, 1870, said Young contracted with said Joy for the legal title, paying $20 cash, and agreeing to pay the balance in six annual payments; first, January 1st, 1873; and was to receive a deed therefor upon final payment which would be in January, 1879; that said Young all along acted as agent for defendant, who furnished all the money, and that he immediately transferred said contract to defendant, and plaintiff delivered possession of the land to defendant, and defendant has received a deed, and that the balance of the said purchase money " owing to plaintiff is due and unpaid." Therefore he prays judgment for $175 and interest from August, 1879.

The answer was a general denial and a plea of the statute of limitations, that the suit was not commenced within five years after the cause of action accrued.

The plaintiff introduced J. Morris Young, who testified in substance that he was superintendent of defendant in 1868 and up to 1878. In 1868 the company wanted to buy some coal land. It ascertained the southeast quarter of the northwest quarter section 14, township 33, range 25, contained coal and was in possession of plaintiff Moore, who had a settler's right thereto. The land was in Kansas. Moore had a cabin and farm and had opened a coal bank; I bought the land from him for the company and took a bond from him, which is as follows:

" Know all men by these presents, that I, B. A. H. Moore, as principal, and Wilson Brayles, his security, acknowledge ourselves to be indebted and justly owe to J.

Morris Young the sum of $700, for the payment whereof we bind ourselves, etc., etc. June 26th, 1868. Witness our hands and seals, etc. Conditioned that, whereas, said Moore has contracted to sell to J. Morris Young the said land (describing it) for $350, of which $175 has been paid, and the remainder is to be paid when the said Moore makes to said Young a title good and sufficient in law to said land; said Young to furnish said Moore with whatever sum of money might be necessary to pay to whoever may under the law be entitled to it. Now, if the said Moore shall execute and deliver a good and valid title to said land to said J. Morris Young, upon his obtaining such a title to the same from the person or persons who will be legally empowered to make such title to him, and also will use all necessary and legal steps, and also use due diligence to and in obtaining such title to said tract of land, then this obligation to be null and void, else to remain in full force and virtue."

I paid $175 down; when the Granby company got the title the other $175 was to be paid. I was acting for the Granby company, and assigned the contract to them. Moore helped to get the title. I had some correspondence with Moore, and always referred the letters to the office at St. Louis. I wrote the following letters to Moore:

"ORONOGO, Mo., December 23rd, 1870.

B. A. H. MOORE.

*Dear Sir:* Your letter of recent date duly received. You will not be required to do anything except to aid us in getting the title to the land. I will want you to go with me to Ft. Scott before very long, to see the railroad company about it. * * Meanwhile all you have to do is to keep still and wait developments, and directions from me." And the next one was to the effect that he had received Moore's letter, referred it to the "head office of the company at St. Louis. * * That Mr. Blow, our president, was absent, and when he returns it would receive the proper consideration."

This letter was dated December 16th, 1874. Moore wrote to me often. I would write to the company putting him off, and tell him it would be fixed all satisfactorily. Moore came to see me in 1879. I wrote the railroad company as to condition of title, and learned then that the land had been deeded to defendant, of which I informed Moore, and this, I think, is the first he knew of defendant having the legal title.

Plaintiff then offered a deed in evidence from the Missouri River, Ft. Scott & Gulf Railroad to defendant for the Moore land, dated September 10th, 1873. Plaintiff then read the deposition of Jno. A. Clark, who said he was land commissioner of the Kansas City, Ft. Scott & Gulf Railroad Company; that he contracted the land to J. Morris Young, and the contract was assigned by him to the Granby Mining & Smelting Company on April 17th, 1871. The contract price was $5 per acre, $20 cash, balance in six equal annual installments. The land was deeded to the Granby company September 6th, 1873.

There was judgment for plaintiff, and the case is here by appeal on the part of the defendant.

I. The first point insisted on for a reversal is, that the suit is founded upon a contract under seal, between plaintiff and one J. Morris Young, to which defendant was not a party, nor named therein; and it is sought to charge defendant on the ground that Young was its agent. It is a settled principle that when a contract is made under seal no one but a party to the deed is liable to be sued upon it. This is the general rule. *Huntington v. Knox*, 7 Cush. 374; Story on Agency, § 160; *Briggs v. Partridge*, 64 N. Y. 357. A contract under seal, made by an agent in his own name, cannot be enforced as the simple contract of the real principal when he shall be discovered. 64 N. Y., *supra*. But there are exceptions to the rule. In many cases such contract will create an implied obligation on the part of the principal, and entitle him to enforce it against the other contracting party, although the direct remedy for a breach

of the original contract must be against the immediate parties thereto. Story's Agency, §§ 160, 422; *Moore v. Hitchcock*, 4 Wend. 285. In this case the contract is under seal, signed by the vendor but not by the vendee. The evidence shows that the vendee was the superintendent of the defendant; that immediately after the making of the written contract the vendee assigned the contract to the defendant; that one-half the purchase money was paid down; that plaintiff assisted in procuring the title, as agreed; and that the defendant took and holds possession of the land, and afterward obtained title. The plaintiff does not sue on the written contract; if he did, it could not be maintained; but he sues on the implied obligation arising from the facts in the case, to-wit: the agency, the partial payment, the possession and the title afterward made to the defendant. He sues to recover the balance of the purchase money, on the collateral liability arising on the contract between plaintiff and Young, the defendant's superintendent and agent. This contract is exclusively (in its form, and character and operation) between the plaintiff and Young; and the defendant not being a party to it could not be sued on the contract itself; but the suit is not on the contract; it is upon the implied collateral obligation of the defendant growing out of the contract and facts in the case, to-wit: the agency, the purchase for the use of the principal, the part payment, the possession by the principal and the after-acquired title in the principal—on the other hand, the execution of the contract on the part of the plaintiff, to-wit: the sale, delivery of possession and his assistance in procuring the outstanding title as per the agreement. We, therefore, hold the circuit court did not err in permitting the written contract to be read in evidence.

II. The statute of limitations is insisted on as a bar to plaintiff's recovery. The replication to the plea of the statute simply denied "each and every allegation of new matter therein." The plaintiff, to avoid the bar of the

statute, offered to, and did read the written contract to show the terms of plaintiff's obligation; and other evidence tending to show that plaintiff failed to bring his suit because he was acting under the directions of defendant's agent Young, and awaiting his instructions, and depending on his assurances that it would be made satisfactory, etc., until in 1879, when he first ascertained the defendant had procured the title to the land. The defendant insists that this evidence was not admissible under the replication.

Whenever the plaintiff relies on some special matter in his replication to the plea of the statute, he must plead it. Angell on Lim., §§ 292, 184; *Vassault v. Seitz*, 31 Cal. 225; Bliss Code Plead., § 393; *Clark v. Hougham*, 3 Dowl. & Ry. 330; *Hubbell v. Fowler*, 1 Abb. Pr. (N. S.) 1; 2 Chitty Plead., 435. In this case the replication was not sufficient to authorize the hearing of evidence to the effect, that by the fraud or misconduct of defendant, the running of the statute was suspended. The defendant must have information as to the facts proposed to be set up as a suspension of the statute, and the court erred in admitting this evidence.

III. The court below properly refused the instructions asked by the defendant. They did not present the case to the jury under the evidence; but the instruction given on behalf of the plaintiff was erroneous. The mere fact that the plaintiff had no knowledge or notice that defendant had obtained the title of the land within five years before the commencement of the suit, was no reason why plaintiff should recover. That want of such knowledge must have been caused by the defendant by improper act or concealment, which prevented the plaintiff from commencing this suit. *Foley v. Jones*, 52 Mo. 64; R. S. 1879, § 3244.

Judgment is therefore reversed and the cause remanded for further hearing. All concur.

NORTON, J., absent.