## ALVA D. DONNER, Respondent, v. JAMES H. WHITECOTTON, Appellant.

### Kansas City Court of Appeals, May 5, 1919.

1. **DEEDS: Breach of Covenant: Undisclosed Principal.** As a result of Section 2773, R. S. 1909, abolishing the use of seals, an undisclosed principal may be held liable for a breach of warranty made by the agent in a deed executed in the latter's own name.

2. ———: ———: **Measure of Damages.** In such a case the suit to recover is based not strictly on the covenant but on the facts of the case and the measure of damages is the extent to which the undisclosed principal is enriched at the expense of the purchaser who bought from him through his agent.

3. **PLEADINGS: Damages.** In an action for loss sustained by breach of covenant of warranty against an undisclosed principal the petition should state the amount plaintiff paid for the land, the value thereof and the value of the land lost compared with the rest, as that is the measure of plaintiff's damages.

Appeal from Randolph Circuit Court.—*Hon. A. H. Walker,* Judge.

REVERSED AND REMANDED.

*Ralph T. Finley* for respondent.

*Whitecotton & Wight* for appellant.

TRIMBLE, J.—In this action plaintiff Donner seeks to hold the defendant, James H. Whitecotton, liable for the breach of a covenant of warranty contained in a deed to plaintiff from defendant's son, A. Tilden Whitecotton, but which the defendant did not sign, nor did his name appear therein in any manner The theory is that the defendant can be held liable as an undisclosed principal, even though the warranting obligation is in a deed, because our statute has abolished seals and thereby destroyed all distinctions between sealed and unsealed instruments.

The defendant, acting as attorney for a Mrs. Clara D. Winn, bid in for her at partition sale a certain Boone county farm supposed to contain 230 acres at the sum of $4600, and the sheriff executed a deed to her which was placed of record. Mrs. Winn was dissatisfied, claiming that defendant paid more than she had authorized him to bid for it. As a result of her dissatisfaction, it was agreed that she should convey the land to defendant's son, A. Tilden Whitecotton, who would give her a deed of trust thereon for $3500, she to receive in addition thereto the sum of $1100 which, with the deed of trust, would make up to her the $4600 she had been required to pay for the land. She executed a warranty deed to A. Tilden Whitecotton, he gave her a deed of trust thereon for $3500 and his father, the defendant, furnished the $1100 which was paid to Mrs. Winn.

Thereafter a trade was made whereby the plaintiff, Donner, exchanged property in Columbia for the farm, each property being valued, for the purposes of the trade, at $7000. There was an incumbrance of $3500 on each piece of property, and the arrangement was that each party should assume and agree to pay the incumbrance on the property he was to get. In other words, they exchanged debts also. This arrangement

was carried out and pursuant thereto A. Tilden White-
cotton executed a warranty deed to the plaintiff herein
conveying the farm aforesaid, the latter assuming- and
agreeing to pay the $3500 deed of trust to Mrs. Winn
with interest from January 1, 1912. Afterwards, Don-
ner conveyed the land by deed with the usual covenants
of warranty to one, Evans, who in turn likewise con-
veyed to one Rusk. Thereafter it was discovered that
the title to, and the possession of, ten acres of the
land were, and for forty years had been, in other
parties, and consequently there was a breach of the
covenant of warranty in each of the deeds above men-
tioned. Rusk thereupon sued Evans upon the latter's
warranty. Evans notified Donner, and the latter notified
the Whitecottons, to defend. Rusk recovered judgment
against Evans for the breach of his covenant to war-
rant and defend the title, and Evans, after paying
same, sued the plaintiff Donner and likewise recovered
judgment against him; and total amount which Donner
was compelled to pay to discharge said judgment with
interest and costs being $633.04.

It was to recover this amount that the present suit
was brought as hereinabove stated.

As originally brought, the suit was against A.
Tilden Whitecotton and James H. Whitecotton, but later
an amended petition was filed in which James H. White-
cotton was the sole defendant. The amended petition al-
leged that plaintiff bought the real estate in question
"which was then owned by said defendant, although the
record title of said real estate was in one A. Tilden
Whitecotton;" that said A. Tilden Whitecotton executed
to plaintiff the deed to 230 acres of land (describing it)
with the covenant to warrant and defend the title; that
there was a breach of the covenant owing to the failure
of title to ten acres of the land whereby said ten acres
was lost to plaintiff.

The amended petition further alleged that "said
A. Tilden Whitecotton was never the beneficial owner
of the land described in said deed, but all of said land,
except the part west of said creek, which was lost to

plaintiff, was in truth and in fact the property of the defendant James H. Whitecotton; that said James H. Whitecotton is the father of said A. Tilden Whitecotton and the title of said land was placed by the defendant in the name of his son for convenience and for other reasons unknown to the plaintiff and said James H. Whitecotton conducted the business concerning said land in the name of his said son, where the record title thereto was to be affected, although his said son had no real or beneficial interest therein; that said land was purchased by said James H. Whitecotton and paid for by him with his own means; and that said James H. Whitecotton in fact received the purchase price for the land described in said deed when the same was conveyed to the plaintiff by said A. Tilden Whitecotton; and that by reason of said facts, and as the facts are, the said James H. Whitecotton transacted the business concerning the record title to said land in the name of his said son as his agent and the said A. Tilden Whitecotton was, in the execution of said deed, acting for his said father, the defendant herein. The plaintiff further states that since said conveyance to the plaintiff by said A. Tilden Whitecotton, the plaintiff has learned for the first time that said A. Tilden Whitecotton is insolvent and has no property out of which a judgment for the damages and costs here could be made.''

Said petition further set up the conveyance to Evans and from him to Rusk and the respective suits heretofore mentioned together with the judgment rendered in each and their payment as before stated.

The answer admitted the execution of the deed from A. Tilden Whitecotton to the plaintiff Donner but denied every other allegation.

The case was tried and submitted to the court, a jury apparently being tacitly waived by common consent. No request for or waiver of a jury is mentioned in the record nor is any point made thereon; and we mention this merely to show how the case was tried. It is a suit at law tried before the court. Special

findings of facts and declarations of law were given, and the court rendered judgment for $613.25, said sum being made up of $456.52, the value, as found by the court, of the ten acres of land lost and the price paid therefor, and $156.73 interest on said sum from March 1, 1912. The defendant appealed.

There is no question but that there was a failure of title as to the ten acres whereby that amount of land was lost to plaintiff; nor is there any controversy over the various conveyances with covenants of warranty as heretofore stated, or over the various suits thereon and the payment of the respective judgments and costs thereof by the respective covenantors down to the deed involved herein.

Some contention is made that the court was not justified in finding that the defendant, James H. Whitecotton, was the real owner of the land and the one for whom the conveyance to Donner was made; but we are wholly unwarranted in taking this view since the record discloses ample evidence to support the trial court's finding that "A. Tilden Whitecotton was not the beneficial owner of said land or any part of the same but that the defendant, James H. Whitecotton, was the real and beneficial owner thereof and held the record title to said land . . . in the name of his said son, A. Tilden Whitecotton for purposes of convenience; that said James H. Whitecotton paid all of the purchase money for said land when the same was deeded to his son, and received all of the proceeds of the sale, including property and money, when said land was conveyed to Alva D. Donner; that while holding the record title to said land, the said A. Tilden Whitecotton held the same for his said father James H. Whitecotton and acted as the agent of his said father in selling and conveying the same to the plaintiff as aforesaid; and that said James H. Whitecotton was the undisclosed principal of said A. Tilden Whitecotton at the time said land was conveyed to the plaintiff." The court further found that "the plaintiff, Alva D. Donner, discovered that the said James

H. Whitecotton was the real and beneficial owner of said land after the plaintiff had sold said land and conveyed the same to one I. V. Evans and said Evans had conveyed the same to one William H. Rusk.'' It was in evidence that at the time of the conveyance of the farm to A. Tilden Whitecotton he was a young man attending the State University; that he had no property; that the title was put in the son's name for convenience; that defendant James H. Whitecotton always spoke of the farm as ''my'' farm and when certain buildings thereon burned, he collected and kept the insurance. ·

The main question in the case is whether the defendant, James H. Whitecotton, can be held liable for the loss occurring by reason of the breach of a covenant of warranty in a deed he did not sign, on the ground that he was the undisclosed principal of the grantor, A. Tilden Whitecotton, who, in executing the deed, was acting for the defendant and with his authority.

With reference to simple contracts, even such as the Statute of Frauds requires to be in writing, the general rule is that an undisclosed principal may be charged with liability on obligations made by the agent in his own name but for his principal's benefit and by his authority. [Weber v. Collins, 139 Mo. 501, 508; Meyers v. Kilgen, 177 Mo. App. 724, 735; 2 Corp. Juris., 841; 21 R. C. L. 890.] To this general rule there are certain exceptions, one of which is in the case of negotiable instruments. [21 R. C. L. 891.] The reason of such exception doubtless being that one who takes a negotiable instrument contracts only with the parties who upon the· face of the instrument are bound for its payment, and is presumed to look only to those parties and not elsewhere. [1 Am. & Eng. Ency. of Law (2 Ed.), 1141.]

Notwithstanding the above general rule with reference to simple contracts, ·it is the well-established common-law doctrine that an action can be maintained upon a sealed contract only against those whose names appear therein; and hence the general rule is that an

undisclosed principal cannot be held liable upon a contract under. seal executed by an agent in his own name. [2 Corp. Juris. 843; 21 R. C. L. 892.] From this it necessarily followed that conveyances of real estate, being sealed instruments, came within the rule; and an undisclosed principal could not be liable for the breach of a covenant of warranty contained in a deed executed by an agent in his own name.

However, section 2773, Revised Statutes 1909, provides that "The use of private seals in written contracts, conveyances of real estate, and all other instruments of writing heretofore required by law to be sealed (except the seals of corporations), is hereby abolished, but the addition of a private seal to any such instrument shall not in any manner affect its force, validity or character, or in any way change the construction thereof." And the question is, what effect does this section have on the rule? Does this section destroy all distinction between sealed and simple contracts so as to allow an undisclosed principal to be held liable for the breach of warranty made by the agent in a deed executed in the latter's own name, or does it merely render a seal unnecessary to the deed's validity, leaving the *status* of the deed, its construction, effect, and the rights and liabilities of the. parties thereto, the same as before? In matters other than the question of liability herein considered, it has been held that the effect of this statute was to change common-law rules so that a deed or other sealed instrument could be dealt with, and treated in the same manner, as any other unsealed contract. [Bosly v. Bosly, 85 Mo. App. 424, 428; Edmunds v. Missouri Electric, etc., Co., 76 Mo. App. 61, 622; Judd v. Walker, 158 Mo. App. 156, 164.]

In Streeter Jr. Co. v. Jann, 90 Minn. 393, a father sent his son to Dakota to buy land for him, he furnishing the money that was paid down thereon. The son, in his own name, entered into ·a contract under seal to purchase a large amount of land and to pay the unpaid portion of the purchase price in yearly installments.

201 M. A.—29

The son having refused to make these payments, suit was brought against the father on the ground that he was the real vendee, that the contract was actually made for him in his behalf, and that of these facts that plaintiff was not informed until after the writing was executed. The court held that the statute abolishing seals abrogated the distinction between sealed and between sealed and unsealed private contracts and that distinction between simple contracts and specialties, executed by private parties, were discarded, and that, therefore, the father could be held liable as an undisclosed principal.

In Efta v. Swanson, 115 Minn. 373, 132 N. W. 335, the same court held that an undisclosed principal is bound by covenants of warranty in a deed made by his agent with authority. The decision was based upon the aforesaid ground that the statute abolishing seals had abrogated all distinction between sealed and unsealed private contracts, and the rule applicable to simple contracts as to the liability of a principal for authorized contracts in his agent's name applied as well to contract underseal.

In Kirschbon v. Bonzel, 67 Wis. 178, the Supreme Court of Wisconsin held that an undisclosed principal could be held liable for the obligation of his agent in a written contract under seal, if the seal was not essential to its validity.

In Stowell v. Eldred, 39 Wis. 614, 626, it is held that an undisclosed principal could enforce the obligation of a contract made by his agent in the latter's name, even though the contract was under seal, provided the seal was not essential to the validity of the contract.

In Sanger v. Warren, 91 Tex. 472, the plaintiff, Mrs. Warren, had conveyed lands to Bowser et al., who, after giving notes to secure the unpaid purchase money, sold the land to one, Rees, who assumed and agreed to pay said notes. In purchasing said land and taking the deed to himself, Rees was in fact acting as the agent of Sanger and others, and, when he subse-

quently conveyed the land, Sanger and his associates received the proceeds. Mrs. Warren sued to recover the amount due on certain of the notes and also to enforce her vendor's lien; and, in addition to a foreclosure, judgment was rendered not only against Sanger and his associates for the balance due on her debt but a judgment was also rendered against them in favor of Bowser et al. for any moneys they might be compelled to pay on the judgment. The cause was submitted solely upon the second count which sought to hold Sanger and his associates on the ground that they were the undisclosed principals of Rees; and the trial court charged the jury, in effect, that though on the face of the deed the land was conveyed to Rees and he assumed to pay the notes, still if he, in making the purchase, was in fact the agent of Sanger et al. they were liable thereon as undisclosed principals. The Supreme Court of Texas, however, refused to hold Sanger liable as an undisclosed principal, and ruled that the Texas statute dispensing with the necessity of private seals did not change the common-law rule as to the liability of an undisclosed principal for the obligation contained in a deed executed by the agent in his own name. The reasoning of the court was that the statute merely rendered it unnecessary to place a seal on a deed, but that, by the very language thereof, the statute did not undertake to give a deed executed without a seal any different *status* from what it would have had before the statute was passed if executed with a seal; that the common-law rules must still be resorted to in order "to determine the nature and extent of the estate conveyed by the deed as well as of the covenants therein contained, and who were bound or benefitted thereby. It was not the intention of the statute to abolish them."

According to this, the rule that an undisclosed principal, when subsequently discovered, may be held liable upon a contract made with his agent, does not apply to a deed or conveyance of real estate whether the instrument is required to be sealed or not.

The case of Jones v. Morris, 61 Ala. 518, cited in the foregoing Texas case, dealt with the sufficiency of a deed executed by Jones' agents to pass the legal title and to estop Jones from recovering the land. And the court held that the statute abolishing seals did not change the common-law rule that a deed executed by an agent, to be valid and binding upon the principal, must with certainty appear to be the deed of the principal, the grant and the warranty must be his. The court further said that while a seal was not now necessary to a conveyance, yet a deed, though shorn of the dignity of a seal, retained all the operation and effect of a deed sealed at common law, its covenants being as comprehensive, and its recitals as incapable of being disputed as if it were sealed with the greatest formality and that the estoppel which at common law grew out of the covenants or recitals of a sealed instrument attach now to an unsealed conveyance of the legal estate in lands. This case, it will be noticed, involves something other and more than the mere question of the liability of a principal for an obligation contained in a deed executed by his agent in the latter's own name. The question there went to the sufficiency of the instrument to pass title, and it was held that while there was "a larger legislative intention" in the statute than merely to dispense with a seal as a necessary element of a conveyance of the legal estate in lands, yet the statute did not aid the deed's insufficiency in other respects, and was not intended to be so broad in its scope as to blot out the common-law principles which give security to conveyances of real estates. We have no quarrel with the proposition that the statute should not be allowed to lessen or remove any of the safeguards or security thrown about titles to real estate; but the question is does the holding of an undisclosed principal liable for the obligation in a deed made in the principal's behalf but by the agent in his own name, in any way lessen the security of land titles? It is hard to see how such a result would follow. And it

would seem that the result reached in the Texas case could have been justified upon the ground that as the plaintiff's claim therein had its origin and foundation in negotiable instruments, her right to hold the undisclosed principal of the agent who assumed the payment thereof, could not rise higher than the source of her claim. For had the maker of the notes been acting for another, Mrs. Warren could not have held Sanger as the undisclosed principal of such maker, since, as heretofore stated, negotiable instruments constitute an exception to the general rule as to the liability of an undisclosed principal.

The Swanson case, above cited, is the only case which we have been able to find directly holding that an undisclosed principal is bound by the covenants of warranty in a deed made by his agent with authority. And with reference to the liabilities arising under a conveyance of real estate, it is perhaps difficult to see why an undisclosed principal should not be held where the statute has abolished seals. While there were other differences, than the mere presence of a seal, between specialties and simple contracts, as to the *effect* to be given the instruments themselves, the difference as to the liabilities arising from the obligations thereof arose largely out of the rigid technical common-law rules pertaining to the use and effect of a seal. The presence of the seal seems to have been the distinguishing feature. [Bishop on Contracts, secs. 110, 163; Story on Contracts, secs. 1 to 10.] And when the seal is removed by statute, it is difficult to find any reason why the distinction between simple contracts and specialties is not also removed, in so far at least as the liability herein considered is concerned. But, however, this may be, it would seem to be clear that, even if such distinction is wholly abolished, a suit for breach of warranty in a deed cannot be maintained against an undisclosed principal based *solely* on the covenant of warranty and nothing else, since the principal does not appear on the face of the covenant as a party to it. The suit is not strictly on the covenant for the

breach thereof but upon the *facts of the entire transaction* including the fact of the covenant, its breach and the loss occasioned thereby. The Swanson case does not disclose the manner in which the suit was brought, nor the basis upon which it rested, but the implication is that it was brought on the facts of the transaction, especially as the measure of damages was held to be the consideration paid by the plaintiff for the land lost with interest thereon from the time of payment. The right of recovery in such case would, therefore, seem to be, not strictly and solely on the breach of the covenant of warranty as such, but on the theory that the undisclosed principal having obtained, through his agent, money to which he was not entitled and for which he gave nothing, should be required to repay same. In Moore v. Granby, etc., Co., 80 Mo. 86, decided before the enactment of our statute abolishing seals, it was ruled that an undisclosed principal was liable upon the implied obligation growing out of the *facts* even though the instrument which the agent executed was a contract under seal and in relation to the conveyance of real estate, but that such liability could not be enforced in a suit based solely on the contract itself. In like manner, it would seem that even though our statute has now abolished seals and has destroyed the distinction between sealed and unsealed instruments, nevertheless, the suit to recover, from an undisclosed principal, loss arising on account of a breach of warranty in a deed, should be based upon the *facts* of the case and not strictly on the covenant itself. In such case the ground of recovery is really on the theory that the undisclosed principal has received something for which he gave nothing in return, and is under an implied obligation to repay the same. If this be the theory on which recovery is allowed, then the measure of damages must be the extent to which the undisclosed principal was enriched at the expense of the purchaser who bought from him through his agent. This is exactly the measure of damages adopted in the Swanson case and is the measure of damages which the trial court

adopted in the case at bar. In other words, the undisclosed principal, in the case of failure of title in a warranty deed, is held liable, not on the theory that he is strictly a party to the covenant, but on the theory that he who has obtained the benefits of a transaction should restore to the purchaser that which he received in exchange for something he never sold nor had the right to sell. In this way the effect of the statute abolishing seals is not extended beyond the manifest purpose of the legislative authorities, nor, on the other hand, will one be permitted to unjustly enrich himself at the expense of another through having a conveyance executed by his agent in the latter's name.

The fact that the suit is not based strictly and solely on the covenant in the deed itself is impliedly recognized in the petition filed by plaintiff since it attempts to set out the facts of the entire transaction as a basis of his cause of action. But the trouble is, the petition does not set out all of the facts so as to enable the court to render a judgment according to the measure of damages hereinabove referred to. It does set out the facts of the deed and its covenant together with the facts showing the defendant to be an undisclosed principal. But it nowhere alleges what the plaintiff paid for the land, nor the value thereof, nor the value per acre of the land lost compared with the rest of the land. All it alleges in reference to plaintiff's loss is the fact that a certain judgment for $633.04 was rendered against him in a suit on the breach of his covenant with Rusk to warrant and defend the title. This of course included costs and expenses of attorneys in defending the title in addition to the value of the land lost, which was properly included therein, since the covenant to defend was one to which he was personally and strictly a party. But the trial court did not allow the expense of defending the title as a part of the recovery herein, but limited the plaintiff's recovery to the value of the land lost. This was done though no allegation in reference thereto was contained in the petition. There was nothing in the petition on

which the court could proceed to ascertain the value of the land lost and the amount by which the defendant was unjustly enriched at the expense of the plaintiff. In other words, the petition afforded no foundation for the ascertainment of the damages according to the measure the court applied. The court, in its declaration of law found that "the measure of plaintiff's damages would be the purchase price paid for the land lost, with interest from the time of delivery of deed and possession, but as no price was fixed for the particular land lost, the court further finds that the measure of plaintiff's damages in such case should be such proportion of the whole consideration paid as the value of the ten acres lost bears to the value of the whole." We think it was necessary for the petition to have contained the proper allegations as a foundation for the application of this measure.

There was no error *against the defendant* in finding the value of the ten acres lost to be of the average value of all the land, since there was evidence that the ten acres was bottom land and worth *more* per acre than the rest.

In arriving at the average price or value per acre the court added the $3500 deed of trust, which the plaintiff paid off, to the $7000, the agreed valuation placed on the properties exchanged, making the consideration paid for the farm $10,500, and thus arrived at the price of $45,652 per acre. But since there was a deed of trust for $3500 on plaintiff's property which he traded for the farm and which deed of trust he was relieved of paying as it was assumed by the other party to the trade, the $3500 incumbrance on the farm, which plaintiff paid off should not have been added to the $7000, but this last-named amount should be taken as the basis on which to figure the value or price per acre of the land. The judgment rendered is excessive by reason of the above-mentioned addition of the $3500 to the $7000 at which the properties were each valued.

The judgment is reversed and the cause remanded. All concur.